AGUIRRE AND ANOTHER *vs.* PARMELEE.

Where the vendor has the right of stopping goods *in transitu*, such right continues, until there has been a full and final delivery of them, at the place named by the purchaser, to the vendor, as the place of final delivery or ultimate destination, as distinguished from a delivery to a person acting as a carrier, or a forwarding agent to the purchaser.

Wool was purchased in New York, by a manufacturing corporation, located at T, through their agent A, to be paid for by the paper of the purchasers, when delivered at T. Upon an order of the vendor, to deliver the same to the purchasers, or *bearer*, such wool was delivered to A, by the store-keeper, who had possession of it, for transmission. A was also agent of another manufacturing corporation, located at S., and it was his usual course of business, to divide between said corporations, large lots of wool purchased for either, each company giving its own notes for its respective shares, when received. A, having divided the wool purchased of the plaintiffs, forwarded one portion thereof to the corporation located at S, without the knowledge of the vendor. Before the wool, so forwarded, was received, both said corporations became insolvent, and such wool was attached, as the property of the corporation at S. In an action of *trover*, against the officers who served said attachment, it was held, that the transitus of said wool was not terminated, either by the plaintiffs' order upon the store-keeper, the acts of the agent of such corporations, or the attachment of the defendant.

THIS was an action of *trover*, for forty seven bales of African wool, brought against Leander Parmelee, sheriff of the county of New Haven.

The defendant pleaded the general issue, with notice of special matter to be given in evidence.

The cause came on for trial, before the superior court for New Haven county, at the April term, 1853, when the court found the following facts, and reserved the question, as to what judgment should be rendered thereon, for the advice of this court.

On the 12th of September, 1851, the plaintiffs, being merchants, engaged in the foreign trade in the city of New York, and having a lot of wool in a custom-house store in that city, sold to the Thompsonville manufacturing company, a corporation located and engaged in the manufacture

of carpets at Thompsonville, in the town of Enfield, in this
state, one hundred bales of said wool, to be paid for, by the
Thompsonville company's paper, at six months.

Nothing was said at the time, as to the time when the
paper should be given, but it was customary in such cases,
to send the paper forward, when the article arrived at the
place to which it was to be sent; and it was the under-
standing of the plaintiffs, that the paper was to be given,
when the wool arrived at Thompsonville.

The sale was made in the city of New York, the plain-
tiffs being applied to by Ripley & Cameron, wool brokers
in that city, through whom all their negotiations were made.
No other party than the Thompsonville Co. was mentioned
to the plaintiffs, as in any way interested in the purchase.
The plaintiffs never having had any previous dealings with
the company, and being ignorant of its existence, the bro-
ker described to them its locality, explained its business,
representing that the wool was wanted by it, for purposes
of manufacture, and gave them references in New York
(on being required by the plaintiffs) as to its character and
credit; the information received by the plaintiffs, on these
references, proving satisfactory, the sale was concluded,
and the following contract of sale was given to the plaintiffs,
by the brokers.

" Sold for Messrs. Aguirre and Galwey,—to the Thomp-
sonville company,—say Y. M. 100 bales washed African
wool, at 20 cts., six months. Tare 8 lbs. per bale. New
York, September 12, 1851.

J. RIPLEY & CAMERON,<br>
per John J. Ripley."

A corresponding entry was made in the books of the
brokers, and a similar entry and charge were also made in
the books of the plaintiffs.

At the time of this sale, Orrin Thompson was the general
agent, in the city of New York, of the Thompsonville com-
pany, to purchase wool on account of the company, to be

Aguirre and another *v.* Parmelee.

transmitted to their factory at Enfield. He was also an
agent, for a like purpose, of the Tariff Manufacturing Com-
pany, a corporation also engaged in the manufacture of
carpets, at Simsbury, in this state. His office in New York
was at the counting-room of Thompson & Co., a firm
which had the selling of the manufactures of the two com-
panies in that city ; but he was not a member of said firm.
His course of business, as the agent of those companies,
was to make purchases for, and transmit to, the companies,
at their respective factories, and in making a large purchase
of wool, it was his general custom to divide the lot pur-
chased, equally between the two companies, each company
giving its own note, for its respective lot when received.
He had been in the habit of making his purchases of wool,
principally, through the brokers, Ripley and Cameron, and
they were acquainted with his agencies and his mode of
business. In directing the purchase in question, he gave no
instructions to the brokers, not to buy, on account of the
Thompsonville Company, nor did he tell the brokers, that
any part of the purchase was intended for the Tariffville
Company, nor did the broker communicate to the plaintiffs,
his relations to the Tariffville Company, or his mode of
dividing purchases made by him, nor was the existence of
the Tariffville Company known to the plaintiffs, until after
they had parted with the possession of the wool.

On the 17th day of September, the plaintiffs received
from Ripley and Cameron, a written order to "deliver the
wool, purchased on account of the Thompsonville Company,
to the bearer" of the order, and thereupon the plaintiffs
gave said bearer, who was a porter, in the employ of Thomp-
son & Co., and was sent by Orrin Thompson, (though not
known to the plaintiffs,) an order, in their usual form, upon
the keeper of the store where the wool was ; of which
order the following is a copy :

*New York, Sept.* 17, 1851.

Mr. JAMES MELDREM :—*Please deliver to Thompsonville*

*Company, or bearer,* Y. M., *ninety-five bales wool, stored at* 5 *West St.*

    *Ex. Theresa*

*And oblige,*

95 *bales.*                         *Aguirre & Galwey.*

*Exhibit B. F. R. G.*               *per Dan'l W. Teller.*

On the 18th Sept., the wool was delivered from the store, upon that order, to the person presenting it. Before being taken from the store, the wool, without the knowledge of the plaintiffs, was, by direction of Orrin Thompson, acting as agent, as aforesaid, for both of the companies, divided into two lots, one of fifty-three bales, and the other of forty-seven bales, the former of which was, at the same time, marked for transportation to the Thompsonville Company, and the latter marked for transportation to the Tariffville Company. On the same day, the lot of forty-seven bales was freighted by Orrin Thompson, to the Tariffville Company, by the New York and New Haven R. R. and was received, by said Railroad Company, for transportation to Tariffville.

On the 17th, the plaintiff sent to Ripley and Cameron, a bill for the wool purchased, which bill was as follows:

                      "New York, 12th Sept., 1851.

The Thompsonville Company,

                 Bo't of Aguirre & Galwey.

Y. M. 100 bales washed Mazayan Wool, viz.: 31,000 lbs gross,

                Tare of 7 lbs. per bale,     700

                         30,501 lbs. net

                       c. 20 + $6100.25"

6 Months. Please draw in three notes, to your own order.

This was the only bill ever rendered from the plaintiffs, or of which they had any knowledge. On the 19th, Mr. Orrin Thompson sent, by mail, to the Tariffville Company, the following bill, with letter subjoined.

New York, September 15, 1851.

Tariff Manufacturing Company,

Bought of Aguirre and Galwey.

Y. M. 47 bales washed Mazayan wool, weighing as per return, viz.: Total weight      4,957

Tare 7 lbs per bale      329    14,628 lbs.

at 20 cts. per lb., is      $2,925.60

6 months.

" New York, Sept. 19th, 1851.

Mr. John Turnbull,—Dear Sir :

Above you have bill and return weight for 47 bales wool, which was sent forward yesterday.      Orrin Thompson."

It was the general course of business, with the plaintiffs, and other merchants engaged in similar business in the city of New York, when selling merchandise to a manufacturer, at a distance, and where the place of manufacture was contemplated as its ultimate destination, to receive the notes of the purchaser, agreed to be given in payment, on the receipt of the merchandise, at its place of destination ; and such was the understanding of the plaintiffs, in the present sale ; nor, during the negotiations, did Ripley and Cameron, or any one else, at any time, give the plaintiffs to understand differently.

The plaintiffs never received the notes of the Thompsonville Company, agreed to be given for the one hundred bales of wool, nor did they ever receive the notes, or any obligation of either the Thompsonville or the Tariffville Company, for the lot of forty-seven bales, sent as before stated, to the Tariffville Company. After the present suit was brought, the Thompsonville Company sent to the plaintiffs, by mail, their Company note, for a sum corresponding with the value of the lot of fifty-three bales, before mentioned, requesting an acknowledgment of its receipt ; but the plaintiffs did not acknowledge its receipt, or enter it upon their books, but retained it in their possession.

---

Aguirre and another *v.* Parmelee.

---

On the 22d of Sept., 1851, the Thompsonville Company, and the Tariffville Company, being deeply insolvent, failed, and the plaintiffs immediately thereupon took steps to recover the wool, in its transit to Thompsonville. The lot of forty-seven bales, which had been freighted to Tariffville, was found in the possession of the defendant, Parmelee, having been by him attached, while in the cars of the New York and New Haven Railroad Company, by virtue of a writ of attachment against the Tariff Manufacturing Company.

The plaintiffs, by their agent, thereupon, on the 24th of Sept., 1851, made demand upon the defendant and upon the Railroad Company, for the wool, with a tender to each, of all charges, but the same was refused, and thereupon the present suit was brought. The value of the forty-seven bales, at the time of the demand, was $2,925.60. Execution was taken out by the Railroad Company, upon a judgment recovered in said suit, and the property levied upon and sold, in due form of law.

*R. I. & C. R. Ingersoll*, for the plaintiffs, contended, 1. That the plaintiffs never legally parted with their possession of the property in question. No contract of sale arises upon the facts found. The plaintiffs never agreed to sell their wool to any other party, than the Thompsonville Company, nor to accept any other party as their debtor, for any portion of it. On the other hand, the Thompsonville Company have never recognized a sale to them, of the entire lot. The sale note, rendered by the brokers to the sellers, and the bills rendered by Orrin Thompson to the supposed buyers, described different bargains. The minds of the parties never met, upon any contract to which the Tariffville Manufacturing Company was a party. *Baldwin, &c.* v. *Mildeberger*, 2 Hall, 176. Long on Sales. (Am. Ed.) p. 5. *Suydam* v. *Clark*, 2 Sandf. Sup. Ct., 133.

2. That if there was a valid contract of sale to the Thompsonville Company, the property in question was not taken out of the possession of the plaintiffs, upon that contract. Orrin Thompson, or the bearer of the delivery order, acting under his directions, must have received the forty-seven bales, as the agent of the Tariffville Company. And, whether the wool in question was taken from the plaintiffs, by the Tariffville Company, through the mistake or fraud of the Company's agent, it never went legally out of their possession.

3. That if the plaintiffs parted with the possession of the wool in question, upon their contract of sale with the Thompsonville Company, they could resume their possession, upon the insolvency of that Company, before the wool had reached the factory of the Company, at Thompsonville, the place of its destination, originally contemplated by the parties, by virtue of their right of stoppage *in transitu.* *Coats* v. *Railton,* 6 B. & C., 403, (13 E. C. L., 223.) *Jackson* v. *Nichol,* 5 Bing., 508, (35 E. C. L., 203.) *Hays & Black* v. *Mouille & Co.,* 14 Penn. (2 Harris.) 40. *Buckly* v. *Furniss,* 15 Wend., 137. *Newhall* v. *Vargas,* 13 Maine, 93. *Stubbs* v. *Lund,* 7 Mass., 456. Blackburn on Sale, 201. The wool had not reached the destination, contemplated at the time of sale. It was purchased (the case finds) for "purposes of manufacture." The "locality" of the company was represented to the plaintiff, by the broker, as at Enfield. The notes to be given, for the purchase, were to be given, "when the wool arrived at Thompsonville." "The place of manufacture was contemplated as its ultimate destination." There it was to be "applied to the use" of the purchaser.

4. That the transit of the wool was not determined by anything done by the Thompsonville Company, or its agent, before it reached the destination, contemplated at the time of sale. The object and effect of the order of the plaintiffs, upon the store-keeper, to deliver the wool "to the Thomp-

sonville Company, or bearer," was simply to put the wool in transit. The right to stop, *in transitu*, implies a delivery to some intermediate agent. *Jackson* v. *Nichol*, 35 E. C. L., 203. Orrin Thompson had no authority from the Thompsonville Company, to take the general control of the wool for them, and thus determine the transit. The case finds, that he was merely their "general agent in the city of New York, to make purchases of wool, on account of the Company, to be transmitted to their factory at Thompsonville," and that, "his course of business, as the agent of the Company, was to make purchases for, and transmit to, the Company, at its factory."

5. That Thompson, in fact, did nothing but to send the wool forward to its destination, as he supposed it to be. The division, which the case finds he directed to be made, as "the agent of both Companies," was a preparatory step for its transportation. He did nothing else, except to direct the wool to be "marked for transportation," and to freight the parcel in question, to Tariffville, whither, as is evident from his letter to that Company, he supposed it was to be "sent forward." And all this was done, "on the same day." Upon the same principles, the plaintiffs had a right to stop the wool, in transit to Tariffville, if it shall be contended that there was a sale, by them, to the Tariffville Manufacturing Company.

6. That the right of stoppage *in transitu*, is not defeated, by an attachment, in favor of the creditors of the vendee. *Smith* v. *Gass*, 1 Camp., 282. *Woodruff* v. *Noyes*, 15 Conn. R., 335.

*Dutton* and *C. A. Ingersoll*, for the defendants, claimed,

1. That the facts found by the court show, that the title to the goods had vested in the Thompsonville Company. So far as the defendant is concerned, this deprives the plaintiffs of a right of action.

2. That the vendor has no right to a stoppage *in transitu*,

when the goods have been delivered to the vendee, or an agent, authorized to take charge of the goods. *Woodruff* v. *Noyes,* 15 Conn. R., 335, 340. *James* v. *Griffin,* 1 Mees. & W., 20. 2 Mees. & W., 623. 8 Taunt., 83, 4 E. C. L., 27. *Coats* v. *Railton,* 6 B. & C., 422, (13 E. C. L., 225.) Thompson was the agent of the vendees. A delivery to him was a delivery to the vendees. It was the ordinary case of a purchase, by a mere agent, who, of course, has a good right to receive the goods.

3. That Thompson had authority, in New York, to dispose of the goods, at least to the Tariffville Company. This had been his course of business. The plaintiff had nothing to do with sending the goods to Thompsonville or Tariffville. Thompson, as the agent of both companies, put them on board the cars.

4. That the fact found, that the goods were not to be paid for, until received by the vendees, shows, that the payment was not a condition precedent. The plaintiff had no agent, to receive the notes; he relied on the vendees, to send them after they had received the goods. *Lupin* v. *Marie,* 6 Wend., 77.

5. That the vendees were under no obligation to transport the wool to Thompsonville. The plaintiffs supposed it was to go there, but that created no obligation; they were entitled to the notes in payment, as soon as Thompson had taken possession of the wool, or, at least, as soon as he exercised ownership over it.

HINMAN, J. Upon the facts found by the court, in this case, we are of opinion, that the plaintiffs are entitled to judgment. If we look at the case, as the plaintiffs must have viewed it, at the time they ordered the goods to be stopped, which is, perhaps, the most natural aspect in which it is presented, by the facts, it is clear of all difficulty and doubt. The Thompsonville Company, through the agency of Mr. Orrin Thompson, purchased of the plaintiffs, in

New York, a large quantity of wool, including the forty-seven bales in question ; and, while it is on its transit, from New York to Connecticut, before it comes to the possession of the vendees, and on their failure, without paying for the wool, or, in any form, complying with the terms of the contract, on which it was sold, the bales in question were stopped by the plaintiffs at New Haven. These facts make out the ordinary case, where the right to stop goods, *in transitu,* is said to attach ; and the questions in the case seem all resolved into this, whether there is any thing in the other facts, shown in the finding, which will deliver the case from the operation of the rule of law, in regard to the right of the vendor to stop goods *in transitu.* The defendant's counsel rely, in the first place, upon the delivery of the goods to Orrin Thompson, in New York ; claiming, that the right to stop them was terminated by that delivery. We, however, do not think that can be said to be such a delivery as to put an end to the vendor's right to stop them *in transitu.* The delivery was not to him, as owner, nor, as agent of the owners, to dispose of them in any other way than to transmit them to the vendees' place of business. The finding is, that he was the agent of the vendees, to make purchases of wool, to be transmitted to Thompsonville, and this seems to be the extent of his agency. He stood, therefore, rather in the position of a mere forwarding agent, than in that of an agent to receive the goods for the vendees' use ; and no point is clearer than that a vendor, where the right to stop *in transitu* exists at all, may stop the goods in every sort of passage to the hands of the purchasers. *Stokes* v. *LaRiviere,* cited, 3 E., 397.

We do not say, as was intimated by Lord Mansfield, in *Hunter and another* v. *Beal,* cited, 3 T. R., 466, that "the goods must have come to the corporal touch of the vendees." But, to take away this right, there must have been an absolute delivery in New York, for the use of the vendees, and it must have been a full and final delivery, as contradistinguished from a delivery to a person, acting as a carrier or

forwarding agent to the principal. *Dixon* v. *Baldwin*, 5 E., 134. And this delivery should be at the place named by the purchaser, to the vendor, as the place of final delivery, or ultimate destination of the goods. They must either come to the actual possession of the vendee, or to that place where, by his authority, they are destined to come, for his use, and where nothing further is to be done with them but to sell them to a customer, or apply them to his use. *Coats* v. *Railton*, 13 E. C. L., 223. *Jackson* v. *Nichol*, 35 E. C L., 203. *Stubbs* v. *Lund*, 7 Mass., 453. According to this test, the *transitus*, in this case, would continue until the wool arrived at Thompsonville, which was the place where it was to be sent, for the use of the purchasers.

It is said, however, in answer to this, that the agency of Orrin Thompson for the Tariffville Company, at Simsbury, in connection with his agency for the Thompsonville Company, and his general course of business, as the agent of both companies, of dividing the large lots of wool which he purchased for either of them, between the two, and each company giving its own note for its respective lot or share, when received, justified him in dividing the wool which he purchased of the plaintiffs, between these two companies, as he did; and that this division, and the transmission of these forty-seven bales to the Tariffville Company, took away, and destroyed the plaintiffs' right to stop these goods, on their way to the latter company. On any question between these two companies, where the interests of third persons are not involved, it is no doubt true, that Mr. Thompson had authority to divide the lots of wool which he purchased for either, between them both. But the plaintiffs were not privy to any arrangement of this sort, and their interests ought not to be affected by it. They had no connection with the Tariffville Company. That company was not named to them; and they did not even know of its existence. It seems clear, therefore, that the plaintiffs are not bound to recognize the Tariffville Company, as having

any interest whatever in the goods, so long as they were on their transit. Indeed, it is by no means clear, that the plaintiffs are not right, in claiming, that, in respect to them, the division of the goods, and the sending of a part of them to Tariffville, is such a departure from the understanding and agreement of the parties, as to justify them in retaking their goods, on the simple ground, that they had never legally parted with their possession of them, irrespective of their right to stop them *in transitu.* As the plaintiffs did not know the Tariffville Company in the transaction, they had never agreed to accept of that company, as their debtors, for any portion of the wool, and, as the Thompsonville Company never forwarded their note for the whole purchase, and do not appear to have been advised of the purchase of the whole lot, by their agent, but only of the part sent to them, it would not, perhaps, be going too far to say, there was such a mutual misunderstanding, as rendered the contract inoperative. But, however this may be, we do not feel called upon to determine it; and we do not place the case on this ground. The defendant claims the goods, by virtue of an attachment of them, as the goods of the Tariffville Company. Of course, he claims, and must claim, that the act of Orrin Thompson, in dividing the goods into two lots, and sending the forty-seven bales to the Tariffville Company, was a legal and valid act, not only in respect to the two companies for which he was agent, but also in respect to the plaintiffs. He, therefore, seeks to affirm that act, by claiming the property under it. Now, when it is shown, as in a former part of this opinion, we have said it is shown, that there was no absolute delivery of the goods in New York, to the purchasers, or to Orrin Thompson, for their use, as owners of them,—but only to him as a forwarding agent, it is obvious, that, while the defendant claims the goods, under the act of Orrin Thompson, he must also claim them to have been purchased by the Tariffville Company, of the plaintiffs. But, upon this claim, the plaintiffs must also be

at liberty to affirm that transaction, as a sale from them, and to waive the irregularity, arising from the absence of any previous consent to the sale, on their part. On doing this, they, of course, have the same right of stoppage *in transitu,* against the Tariffville Company, that otherwise they would have had against the Thompsonville Company; and, as the finding is, that both these companies became insolvent, and failed at the same time, on the 22d of September, 1851; and as the plaintiffs stopped the goods at New Haven, before the contract had been complied with, by either company, we do not see why the plaintiff, as against the defendant, who claims the goods, only on the supposition that there was a sale to the Tariffville Company, had not a right to stop them, as against that company, and the defendant who claims under it. We, therefore, have not been able to perceive any ground, on which the defendant can retain the goods, as against the plaintiffs, and we accordingly advise the superior court, to render judgment for the plaintiffs.

In this opinion, the other judges concurred.

Judgment for the plaintiffs.