WILLIAM F. ALLEN and another

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Cumberland. Opinion March 24, 1887.

*Carriers. Stoppage in transitu.*

A notice by the shipper to the carrier, not to deliver goods in transit, to the consignee, need not state the reason.

Upon receiving such a notice the carrier replied that the shipper would have to prove property, and thereupon the shipper forwarded his affidavit that he was the shipper and annexed to it an invoice of the goods. Before receiving the affidavit the carrier delivered the goods to the consignee. *Held*, that the carrier was liable to the shipper for the value of the goods.

ON report, upon agreed statement of facts, from the superior court.

Case for the value of four bales of woolen rags of the value of of $176.41, shipped by William F. Allen and Co. of Philadelphia, to William Beatty of Gray, Maine.

Soon after Allen and Co. parted with the goods they learned that Beatty was insolvent, and notified the station agent of defendant company who had charge of receipts and delivery of freight at Gray, Maine, to stop the transit of the goods. They gave this notice by the following telegram received at quarter past three of the afternoon of its date. "Philadelphia, March 24th, 1884. Stop and return four bales rags consigned to William Beatty, No. Gray, Maine, marked Diamond P. with B. outside.                               W. F. Allen & Co."

They also at the same date, March 24th, 1884, instructed the agent of the steamship company, the Winsor Line, to have the stock returned, and wrote a letter in addition to their telegram to the said station agent of the Maine Central Railroad, at Gray, Maine, of which the following is a copy :

"William F. Allen & Co., Woolen Rags, Wool and Hair, No. 132 North St., Phildelphia, March 24, 1884.

"To F't Agt. Maine Central R. R., Gray, Maine    Dear sir: We telegraphed you to stop and return four bales rags consigned to William Beatty, No. Gray, Maine, marked Diamond P. with B. outside, we now write to confirm same, inclosed you will find a postal card, please make us an early reply and oblige.

Yours truly,        W. F. Allen & Co."

A postal card was inclosed, with their printed address upon it, for an answer. In answer to the letter and telegram, A. H. Perley, the station agent at Gray, on March 26, 1884, sent the following message upon the postal card which had been forwarded to him by plaintiffs, to wit :

"Gray, March 26, 1884. Your rags are in freight-house at Gray. Mr. Beatty claims that he can take the rags if he pays the freight. I will do as the company says. A. H. Perley."

This postal card was received by plaintiffs, as appears by the post-stamp upon it, March 27th, 1884 ; and upon the same day plaintiffs sent another letter to Perley, as follows :

" Dear sir :   Your postal at hand; we are very much obliged

to you for the information in reference to rags consigned to Beatty; we have instructed the agent of the Steamship Co. here to have the stock returned, which we trust will be successful; and if we do get them back it is all due to your kindness in notifying us. We inclose you a postal which, if not too much trouble, would like you to write and state whether the rags have been shipped back or not. Awaiting your reply, we remain,

Respectfully yours,     W. F. A."

Before receiving the last letter Perley, under date of March, 27th, wrote Allen & Co. as follows:

"You will have to prove that those rags are yours before I can send them; Mr. Beatty claims them. A. H. Perley, Agent."

On March 28th, in answer to postal of Perley, of March 27th, just quoted, plaintiffs wrote to Perley as follows:

"Dear sir: Your postal at hand; we have forwarded through the Winsor Line agent our affidavit proving our claim to the goods which will probably arrive at your end of the line in due time. Our attorney advises this course, although our telegram to you would relieve you of any responsibility, but of course you are the judge of that. As soon as our affidavit arrives please return stock. Thanking you for your promptness in answering our communication, we remain,     Respectfully yours,

W. F. A. & Co."

On April 1, the general freight agent at Portland received the following letter inclosing an affidavit a copy of which follows:

"Office of the Boston & Phildelphia Steamships, E. B. Sampson, Agent. 70 Long Wharf, Boston, March 31, 1884.

"Mr. W. S. Eaton, General Agent Maine Central R. R. Portland.

"Dear sir: Referring again to the four bales rags consigned to Wm. Beatty, North Gray, Maine, our agents in Philadelphia send me a copy of bill and desposition of shippers which I herewith inclose to you, they further say, 'from what we know of the firm we believe the goods belong to them (the shippers) and that their request to have them returned should be complied with unless there are some legal proceedings to prevent it.' Please advise me result. Yours truly,     E. B. Sampson, Agent."

The bill and deposition are as follows :

"Philadelphia, March, 15, 1884.

" Mr. Wm. Beatty,    Bought of Wm. F. Allen & Co.,
Wholesale Dealers of Woolen Rags, Wool and Hair, No. 132
North Front Street.

| 493 | 4 Bales Soft Woolens, | | |
|---|---|---|---|
| 467 | 1,857 | 9½ | $176.41 |
| 456 | | | |
| 441 | Marked Diamond P. with B. outside. | | |

Shipped to North Gray, Maine, via Winsor Line."

"State of Pennsylvania.   County of Philadelphia, ss.   Before
me, the subscriber, a Notary Public, personally appeared William
F. Allen, who being duly sworn according to law, doth depose
and say that he is a member of the firm of Wm. F. Allen & Co.
and that said firm of Wm. F. Allen & Co. shipped four bales of
soft woolen rags, as is set out on the invoice hereto attached,
marked A. J. R. M. N. P., to Wm. Beatty of North Gray,
Maine, by the Winsor Line, via Maine Central Railroad.

William F. Allen."

"Sworn to and subscribed before me the 28th day of March,
A. D. 1884.       Joshua R. Morgan, Notary Public."

In afternoon of March 31, the station agent at Gray, under
threat of immediate suit by Beatty, delivered the goods to him.

*Clarence Hale*, for the plaintiff.

The notice was sufficient.   Benjamin on Sales, (4 Am. ed.)
859 ; *Holst* v. *Pownal*, 1 Esp. 240 ; *Northey* v. *Field*, 2 Esp.
613 ; *Litt* v. *Cowley*, 7 Taunt. 169 ; *Newhall* v. *Vargas*, 13
Maine, 93 ; *Mills* v. *Ball*, 2 Bos. & Pul. 457 ; *Reynolds* v. *B.
& M. R. R. Co.* 43 N. H. 580 ; *Mottram* v. *Heyer*, 5 Den. 633 ;
*Rucker* v. *Donovan*, 13 Kan. 251 ; s. c. 19 Am. Rep. 85 ; *Ex
parte Falk*, 14 Ch. D. 446.   Notice was given proper party.
*Whitehead* v. *Anderson*, 9 M. & W. 518 ; *Litt* v. *Cowley*,
*supra*.   Carrier liable.   2 Kent's Com. (12 ed.) 605 ; Benj.
Sales, § 861, and cases cited.

*Drummond and Drummond*, for the defendants.

In the first case of this character at law, the consignee's claim

was not allowed, but in a case in equity, the claim was allowed, " As a matter of equity based upon the equitable lien of the vendor for the price of the goods." 2 Rorer on Railways, 1335.

At first the doctrine was that this claim could be exercised only where the consignee became insolvent after the purchase of the goods; but it was soon extended to cases in which he was insolvent at the time of the purchase, but the fact not known to the consignor till afterwards. 2 Rorer on Railroads, 1337, 3.

We invite examination of some text-book law, founded upon dicta of courts. It is said that the consignor, must "serve a notice upon the carrier, describing and identifying the goods, the nature of his claim, the evidence thereof and of his own identity as consignor, and notifying the carrier not to deliver the same to the consignee." 2 Rorer on R. R. 1337, 1338.

The author adds : "After the service of such notice on the carrier, he cannot deliver the goods to the consignee, without rendering himself liable to the consignor, in case it turns out that consignor is entitled to the possession of the goods and incurs a loss by reason of their being delivered to the consignee." *Ibid*. 1338.

But suppose they are not delivered to the consignee, and "it turns out" that the consignor is not entitled to the possession? If so delivered, the consignor may maintain trover, to enforce his right, "if well founded." *Ibid*, 1338

If not "well founded" cannot consignee maintain trover, if they are not delivered to him? The same author says further, "After notice, it becomes the duty of the carrier to hold the goods, and not deliver them to the consignee. The law will then afford the parties, consignor and consignee, or the assigns of the latter, such opportunity of asserting or enforcing their rights to the property as will effectually guard the interests of the carrier from the responsibility of delivering to either when not entitled to receive the same. We do not conceive it to be the duty of the carrier to decide between them, and actually deliver the goods to the alleged consignor, or that it is required by law, forasmuch as the carrier can seldom, if ever, know, and is not made the judge to decide, whether or not the circumstances exist which reinvest

the property in the consignor, or, indeed, whether the person claiming to be the consignor be, in fact, such or not; and especially on long lines of railways, is personal knowledge the more impracticable. After notice, he occupies the position of a stake-holder between the parties."

And again : "In short, the duty of the carrier, raised by the notice, is a negative one. It requires him to not deliver the goods to the consignee, thereby placing him in the light of a stake-holder of the property for those who may, by legal process, prove themselves entitled to it. It does not make the carrier a judge to decide who is entitled to the property, nor is he bound to take on himself the responsibility of determining that question ; but it becomes his duty to hold it, and let the parties assert their rights by judicial process, as in cases of other disputes about property in the hands of a third person, and if need be the parties may be compelled, on general principles, at his application, to interplead with each other as to the ownership or right of possession."

With all deference to the learned author and the other authors whom he quotes, except the statement relating to a bill of interpleader, the whole extract is "a delusion and a snare," legally and practically. It is not law and never has been law. No decided case can be found which holds that a carrier can legally defend an action brought by a consignee for refusal to make instant delivery of goods, on the ground that he had been notified that the consignor claims to stop them *in transitu*, unless he goes further and shows the right of the consignor to stop them.

Benjamin in his work on Sales says : "The usual mode is a simple notice to the carrier, stating the vendor's claim, forbidding delivery to the vendee, or requiring that the goods shall be held subject to the vendor's orders." § 1276.

In a note he says, "If the party in possession is clearly informed that it is the intention and desire of the vendor to exercise his right of stoppage *in transitu*, the notice is sufficient." § 1267, note.

EMERY, J.   The only mooted question in this case is, whether the plaintiffs effectually exercised against the carrier their clear right of stopping the goods *in transitu*.

The plaintiffs seasonably telegraphed and wrote the proper officer of the defendant company, (the carrier) to stop, and return the goods. The defendant company contend the notice was insufficient, because there was no statement of the nature or basis of the claim, to have the goods stopped. While such a statement is probably usual, it does not seem necessary in this case. The carrier is presumed to know the law, and by such a notice as was given here, is effectually apprised of a claim adverse to the consignee, as well as of a claim upon himself. In Benj. on Sales, 1276, while it is said that the usual mode is a simple notice to the carrier, stating the vendor's claim, &c., it is also stated, that, "all that is required is some act, or declaration of the vendor countermanding the delivery." BREWER, J., in *Rucker* v. *Donovan*, 13 Kan. 251, (19 Am. R. 84) said, "a notice to the carrier to stop the goods is sufficient. No particular form of notice is required." In *Cleminston* v. *G. T. Ry. Co.* 42 U. C. Q. B. 42, while it was held that the notice was faulty in not identifying the goods, it was said that a specification of the basis of the claim was not necessary.

The defendant further contends, that the plaintiffs' omission to afterward prove to the carrier their right to stop the goods, when requested by the carrier to do so, has vacated their claim, and released the carrier from liability. But the carrier is not the tribunal, to determine the rights of the consignor and consignee. Neither of these parties can be required to plead or make proof before the carrier. No man need prove his case to his adversary. It is sufficient if he prove it to the court. The carrier cannot conclusively adjudicate upon his own obligations to either party. He is in the same position as is any man, against whom conflicting claims are made. If, as is alleged here, the circumstances are such, that he cannot compel them to interplead, he must inquire for himself, and resist, or yield at his peril.

It is reasonable however, that the person assuming the right to stop goods in transit, should act in good faith toward the carrier. He should, if requested, furnish him in due time, with reasonable evidence of the validity of his claim, though it may not amount to proof. Should the consignor refuse such reasonable informa-

tion as he may possess, such refusal might be construed as a waiver of his peculiar right, and might justify the carrier after a reasonable time, in no longer detaining the goods from the consignee. But there was no such refusal here. The plaintiffs sent forward the invoice and their affidavit within a reasonable time.

The plaintiffs have now proved their right to stop the goods, and the defendant company having denied that right without good reason, must respond in damages.

*Judgment for plaintiffs for $176.41, with interest from the date of the writ.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.