Interstate Window Glass Corporation *v.* New York,
N. H. & H. R. Co.

INTERSTATE WINDOW GLASS CORPORATION *vs.* THE NEW
YORK, NEW HAVEN AND HARTFORD RAILROAD
COMPANY

Third Judicial District, New Haven, January Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

Under the Federal Uniform Bills of Lading Act, it is the privilege
but not the duty, of the carrier to refuse delivery of the ship-
ment until the bill of lading is surrendered; but if it makes
wrongful delivery without securing such surrender, it does so
at the risk of indemnifying the consignor in an action of con-
version for any loss occasioned thereby.

A consignor's right of stoppage *in transitu* continues until final de-
livery by the carrier to the consignee.

A notice of stoppage *in transitu* need not specify the nature or basis
of the consignor's claim to exercise his right, since the right
only exists in the case of the consignee's insolvency, and the
carrier must be presumed to know this from the notice given.
(*One judge dissenting.*)

A carrier may always protect itself against an improper delivery, or
an improper refusal to deliver, by making an investigation of
the facts within a reasonable time and requiring the surrender
of the bill of lading, and, then, if its course is still in doubt, by
obtaining an adjudication of the respective claims of the parties
in an action of interpleader.

The defendant claimed that its freight agent was not bound to con-
strue the letter and telegram notifying it to stop delivery as a re-
quest, order, or direction from the plaintiff, because the telegram
was signed by a third party, viz., "S. Bryan Kneass, Eastern
Sales Agency," and the letter, though written on the plaintiff's
stationery, bore the same signature. *Held* (*one judge dissent-
ing*) that this claim was without merit; that the telegram and
letter were in themselves sufficient to apprise the freight agent
of their source and authenticity; that he must have fully under-
stood the telegram and letter as an order of stoppage *in tran-
situ;* and that the intentional untruthfulness of his replies to the
plaintiff that "instructions received too late to stop delivery,"
obviously made to evade liability for the loss of the shipment,
tended to prove not only his knowledge of the plaintiff's pur-
pose, but also the defendant's liability for the wrongful delivery.

The defendant was in no position to claim that the finding as to

the contents, condition and value of the shipment was made without evidence, since they were made substantially in accordance with the statements contained in the defendant's draft-finding.

Argued January 19th—decided April 8th, 1926.

ACTION to recover damages for the loss of goods alleged to have been delivered by the plaintiff to the defendant for transportation as a common carrier, brought to the Superior Court in Fairfield County and tried to the court, *Nickerson, J.;* judgment for the plaintiff to recover $3,634.06, and appeal by defendant. *No error.*

On December 8th, 1923, the plaintiff delivered at Kane, Pennsylvania, to the Pennsylvania Railroad Company, a common carrier of goods, eight hundred and twenty-five boxes of window glass of the value of $3,367.97, consigned to, and to be transported to, the United Plate Glass Corporation of Bridgeport, Connecticut; the railroad accepted this glass as a common carrier, and delivered to plaintiff a straight nonnegotiable bill of lading, issued under and in conformity with the Federal Bills of Lading Act, and agreed to transport the glass from Kane and deliver it to the consignee in Bridgeport. The Pennsylvania Railroad transported the glass over its lines and delivered it to the defendant, a connecting railroad and a common carrier. The plaintiff retained and has always retained the bill of lading. On December 17th, 1923, the car containing the glass was in the custody of defendant as a common carrier, and while in its custody the eastern sales agent of the plaintiff, having learned that the consignee named in the bill of lading was insolvent, immediately sent the freight agent of defendant at Bridgeport the following telegram: "Do not deliver to United Plate Glass Corpn car N H eight five

four naught eight excepting upon presentation of bill of lading. This car was shipped by Interstate Window Glass Co from Kane Penna Dec eighth. [Signed] S. Bryan Kneass, Eastern Sales Agency." This telegram was delivered to defendant at its freight office in Bridgeport on December 17th, 1923, at 3:10 p. m., and came to the attention of the freight agent, freight-car clerk and cashier of the defendant, all of whom were in charge of the car of glass and of its movement and delivery. On December 17th, following the telegram, the eastern sales agent confirmed by letter to the freight agent the sending of this telegram, and requested him to see that his instructions were carried out. This letter was duly received on December 18th by the same agents and employees of defendant and before it had made delivery to the consignee. On December 18th, a truckman for the consignee requested delivery of the glass, but defendant's agents and employees demanded from him the bill of lading as required by plaintiff's telegram and letter. Later in this day defendant delivered the glass to the truckman of the consignee and without the delivery of the bill of lading. On December 19th following, the consignee went into bankruptcy, was adjudicated a bankrupt, and a temporary receiver was appointed, and later a trustee elected to wind up its affairs. The 825 boxes of glass were a part of the estate of the United Plate Glass Corporation. On December 20th following, defendant sent the following telegram "collect": "Bridgeport, Conn. S. Bryan Kneass, 1182 Broadway, New York, N. Y. Instructions received too late to stop delivery N H 85408. H. M. Hedderly, Agent." On the same day defendant by its agent, Hedderly, sent plaintiff this letter: "Your letters of December 17th and 19th regarding delivery of N. H. 85408. In-

structions received too late to stop delivery. P. S. This confirms our telegram to you today." The statements in the telegram and letter sent by defendant's agent were untrue and were intended to deceive the plaintiff and thereby evade responsibility for the loss of the car of glass. The eight hundred and twenty five boxes of glass were reasonably worth $3,073.39, and the boxing $294, making a total of $3,367.09, which was the reasonable value of the shipment for which plaintiff has never been paid. The eight hundred and twenty-five boxes of glass as shipped from Kane and delivered to defendant and as delivered to the consignee, were in good order, and were receipted for by the consignee as in good order.

The trial court reached these conclusions: (1) The plaintiff gave the notice to stop delivery in the exercise of its right of stoppage *in transitu.* (2) The defendant had reasonable notice to stop delivery of the car of glass. (3) The defendant wrongfully delivered the glass to the consignee.

*Harry L. Filer,* for the appellant (defendant).

*Joseph G. Shapiro,* with whom was *Harry Allison Goldstein,* for the appellee (plaintiff).

WHEELER, C. J. The Pennsylvania Railroad, upon receipt from plaintiff of eight hundred and twenty-five boxes of glass for transportation, gave to it a nonnegotiable bill of lading issued under the Federal Bills of Lading Act. That Act does not require the carrier to secure the surrender of the bill of lading before the delivery of the shipment, but it gives it the privilege of refusing to make delivery except upon its production and surrender. The defendant, having made wrongful delivery to the consignee without requiring

the production and surrender of the bill of lading, took the risk of indemnifying the plaintiff, if it suffered a loss in consequence of its act, in an action of conversion arising out of the obligation of the carrier created by the bill of lading. *Pere Marquette Ry. Co.* v. *French & Co.*, 254 U. S. 538, 41 Sup. Ct. 195; *Alderman Brothers Co.* v. *New York, N. H. & H. R. Co.*, 102 Conn. 461, 465, 129 Atl. 47.

The right of the plaintiff shipper to stop the delivery of the goods *in transitu* continued until defendant had finally delivered them to the consignee. *Aguirre* v. *Parmelee*, 22 Conn. 473. The consignee's insolvency, as defined in General Statutes, § 4742, is not in issue in this case.

Defendant's first point is that the trial court erred in holding that a duty was imposed upon defendant to deliver this shipment only upon presentation of the bill of lading, and that there was a misdelivery of the shipment. The court did not so rule, but did rule that there was a misdelivery. If the court had ruled that defendant could only deliver the shipment upon presentation of the bill of lading, the plaintiff was fully authorized, in a case of insolvency, to stop delivery while the goods were in transit and impose upon defendant this condition. Possession of the bill of lading remained in the plaintiff and could only pass into that of the defendant by plaintiff's own act. While defendant could take the risk of delivery without requiring the presentation of the bill of lading, the plaintiff, in the case of insolvency, in the reasonable exercise of its right to stop delivery, might condition delivery upon such a presentation. The defendant denies that the plaintiff exercised its right to stop the delivery of these goods in transit, and claims that, consequently, there was no misdelivery, for the reason

that the plaintiff's notice to defendant was inadequate in its instruction, and incapable of being understood by defendant as a notice from the agent of plaintiff. The notice by the plaintiff to defendant, by telegram and letter, not to deliver these goods to the consignee except upon presentation of the bill of lading, did not specify the ground of the plaintiff's notice to be the insolvency of the consignee. It did not have to state the nature or basis of the plaintiff's claim to stop the delivery of the goods. The law gave the plaintiff the right to stop delivery only in case of the insolvency of the consignee, and the defendant must be presumed to have known this. *Allen* v. *Maine Central R. Co.*, 79 Me. 327, 9 Atl. 895; *Phillips-Patterson Co.* v. *Northwestern R. Co.*, 108 S. C. 166, 93 S. E. 868; *Pool* v. *Columbia & G. R. Co.*, 23 S. C. 286; *Poole* v. *Houston & T. C. Ry. Co.*, 58 Tex. 134; *Faust* v. *Southern Ry. Co.*, 74 S. C. 360, 54 S. E. 566; *Jones* v. *Earl*, 37 Cal. 630; 2 Hutchinson on Carriers, §§ 758, 772; 2 Williston on Sales (2d Ed.) § 541. The carrier may in every case protect itself against an improper delivery on the one hand, and an improper refusal to deliver on the other, by making, within a reasonable time, an investigation, and by requiring the presentation and surrender of the bill of lading, and if, after taking such precautions, it is in doubt as to its course, it may by interpleader have the respective claims of the parties adjudicated. 2 Hutchinson on Carriers, § 775.

Defendant also claims that the defendant was not obliged to construe the telegram signed "S. Bryan Kneass, Eastern Sales Agency," and the letter written on the letterhead of plaintiff but only bearing the typewritten signature, Eastern Sales Agent, as a request, order or direction from the plaintiff. The defendant's freight agent, Hedderly, fully understood that both

telegram and letter were an order or direction; this is apparent from his reply telegram and letter to plaintiff, in which he said, "Instructions received too late to stop delivery," so that this claim is of no significance. Plaintiff's telegram and letter, taken alone, were sufficient to have apprised the carrier of their source and authenticity. The trial court's finding that the statements in the telegram and letter sent by defendant's agent to the plaintiff were untrue, and were intended to deceive the plaintiff and thereby evade responsibility for the loss of the glass caused by him, not only established the agent's knowledge, but also tended to prove the defendant's liability for the wrongful delivery which the agent was endeavoring to cover up by his untruthful and deceitful statements.

Defendant's second and third points are, the court's failure to rule that there was no proof of the contents and condition of the contents of these boxes of glass, or of their value, at the time of delivery to the initial carrier. In its draft-finding defendant asked the court to find that plaintiff delivered eight hundred and twenty-five boxes of glass to the initial carrier and that the value of this shipment was $3,379.35. The court found that the value of the shipment and the boxing was $3,367.99, being their invoice price and the exact value as fixed in the draft-finding, less the freight charge. These admissions by defendant suffice to support the trial court's conclusion as to the contents, condition and value of this shipment, and make unnecessary further consideration of this subject-matter. The findings complained of in these particulars are supported by the excerpts from the evidence attached to the exceptions to these findings.

There is no error.

In this opinion Curtis, Haines and Hinman, Js.,
concurred.

Maltbie, J. (dissenting).  I am unable to assent to
that portion of the opinion which holds that the notice
given to the defendant's agent was a sufficient exercise
of plaintiff's right of stoppage *in transitu.*  No doubt
such a notice need be couched in no particular form,
and very likely it is not necessary to refer in it to the
actual or presumed insolvency of the consignee.  But
it ought at least to have a degree of certainty commen-
surate with the notice of the right it asserts.  "There
must be some act on the part of the vendor indicative
of his intention to repossess himself of the goods."
Brewer, J., in *Rucker* v. *Donovan & Feiferlich,* 13 Kan.
251, 255.  "If the carrier is clearly informed that it is
the intention and desire of the vendor to exercise his
right of stoppage *in transitu,* the notice is sufficient."
*Jones* v. *Earl,* 37 Cal. 630, 632.  In *Phelps, Stokes &
Co.* v. *Comber,* L. R. 29 Ch. Div. 813, 822, Cotton, L.
J., in holding a document insufficient, states that it is
not a "declaration that the vendor intends to retake
possession."  These quotations show the necessity that
the notice shall evince a definite intent on the part of
the vendor to assert a claim to the goods.  Accordingly,
the requirement in the Sales Act is that the vendor de-
siring to exercise the right otherwise than by obtain-
ing actual possession of the goods may do so by giving
"notice of his claim."  General Statutes, § 4725.  Pro-
fessor Williston points out that, as the right "is a
favor granted to the seller for which he has not bar-
gained, it is obvious that the right given must not im-
pose upon the carrier an unfair burden"; 2 Williston
on Sales (2d Ed.) § 541; and to that consideration

may be added the great desirability of certainty in rules governing commercial transactions.

The telegraphic notice in this case was in these words: "Do not deliver to United Plate Glass Corpn car N H eight five four naught eight excepting upon presentation of bill of lading." The letter supplementary to it reads as follows: "I telegraphed this afternoon instructing you not to deliver car N H 85408 to the order of the United Plate Glass Corp. excepting upon presentation by them of the original bill of lading. Will you please see that these instructions are carried out? According to my experience, the bill of lading is required by the Railroad Companies before authorizing delivery, and please consider it a requirement in this case." Here certainly is expressed no clear intention on the part of the vendor to resume dominion over the goods, or to have them withheld because of the actual or presumed insolvency of the consignee. The communications might in all reason be read as simply indicative of the vendor's desire that, for some reason, the surrender of the bill of lading should be made a condition of the delivery of the goods; perhaps because some suspicion as to the buyer's responsibility had been aroused and it wanted time to investigate before deciding whether to exercise its right of stoppage; perhaps because it wished to prevent the consignee from obtaining possession of the goods before it had received payment for them; perhaps because it feared that otherwise some person not entitled to do so might obtain possession of them by falsely representing himself as authorized to act for the consignee; perhaps for some other reason.

The telegram and letter seem to me to be in themselves an insufficient notice of the vendor's claim. The finding of the trial court that the subsequent communi-

cations by the defendant's freight agent to the plaintiff's agent were untrue, and were intended to deceive the plaintiff and so evade responsibility for the loss of the goods, can hardly authorize this court to make the inference of fact that the telegram and letter were understood by the freight agent, before delivery was made, to be an attempt to exercise the right of stoppage *in transitu;* they indicate that, after the delivery, he believed that he or his subordinates had done something which might entail unpleasant results for themselves or the defendant, but they certainly do not show, at least so far as to preclude reasonable disagreement, that the telegram and letter, when received and acted upon, were understood as a notice of the vendor's claim to that right; that fact, if it was a fact, could only be found by the trial court. In the absence of such an understanding on his part at that time, which might be imputed to the defendant, the freight agent's falsity and attempts to evade responsibility, made after the delivery, cannot constitute even admissions against the defendant, far less establish its liability. *Perry* v. *Haritos,* 100 Conn. 476, 124 Atl. 44.