174 P.2d 278

**SOUTHERN PAC. CO. v. AGENCIA JOFFROY, S. A.**

No. 4846.

Supreme Court of Arizona.

Nov. 18, 1946.

Knapp, Boyle & Thompson and Arthur Henderson, all of Tucson, for appellant.

Ruffo Espinosa, of Nogales, for appellee.

MORGAN, Judge.

In August 1944 a New York resident importer, · one Carlisle Rountree, doing business as Export Finders Bureau, purchased a car load of Mung beans from one Carlos ˙ Tang of Culiacan, Sinaloa, Mexico. After Rountree had ascertained from the Mexican Consul in New York what the import duty would be, he sent his draft to Tang, the seller, through Banco Nacional de Mexico, S.A., Culiacan. Thereupon, Tang delivered the beans f. o. b. railway car, Culiacan, on a straight railway bill of lading of Southern Pacific Railroad Company of Mexico, a Mexican railroad corporation. The bill of lading showed that the beans were consigned to Export Finders Bureau, 8 Bridge Street, New York, U.S.A., with the notation, "C/o Agencia Joffroy" in Nogales, Sonora. The bill of lading did not specifically designate Carlos Tang as the shipper. It merely stated that the beans had been received from him.

The purchaser, Rountree, had instructed the Banco Nacional to send the bill of lading to New York by air mail. Instead of this, however, the bank forwarded the bill of lading to the Agencia Joffroy in Nogales, Sonora. The Agencia Joffroy was a customs broker, doing a customs brokerage business in Nogales, Sonora, Mexico. Plaintiff claimed that Tang, the seller, by letter to Agencia Joffroy, authorized it to handle the crossing of the carload of shipping into the United States. The letter does not support this contention. There is nothing in the record to indicate Tang's authority to make this representation or request of Joffroy. The Agencia passed the shipment of beans through the Mexican and the United States Customs, and paid all expenses for such passage, including the Mexican export charges. The car load of beans moved on Southern Pacific Company (a Kentucky corporation) railroad from Nogales, Arizona, through connecting carriers and a terminal carrier which delivered the shipment to New York.

While the shipment was in transit, however, the customs broker, Agencia Joffroy, and the purchaser, Rountree, entered into a controversy concerning the amount of Mexican export duties which should have been paid on the shipment. The purchaser, Rountree, claiming that the New York Mexican Consul had quoted export duty substantially lower than that paid by the customs broker, informed the customs broker that he would not pay the charges made by the customs broker. The customs broker, Agencia Joffroy, thereupon notified the Southern Pacific Company (appellant)

to withhold delivery of the shipment until the straight bill of lading was presented by the purchaser. The customs broker sent the straight bill of lading, with draft attached, to a New York bank for collection. The purchaser, Export Finders Bureau, demanded delivery by the railroad in New York of the shipment, and finally, after indemnifying the company, received the shipment of Mung beans.

Thereafter, the customs broker, Agencia Joffroy, filed complaint in the Superior Court of Santa Cruz County, against the Southern Pacific Company; alleging substantially the foregoing facts and praying recovery against the railroad company for its negligence in disregarding the customs broker's instructions to withhold delivery of the shipment of beans from the consignee until the consignee presented the bill of lading, whereby the customs broker lost the $1837.26 which it had advanced in covering expenses incurred in the crossing of the car of beans from Mexico into the United States. These moneys advanced did not include any freight charges. The defendant railroad company moved to dismiss the complaint, which motion was denied by the court. Defendant then answered the complaint, and trial was had in which the foregoing facts were substantially shown. The greater part of the evidence was devoted to proof of the correctness of the charges made by the customs broker. At the end of the case the defendant moved for a dismissal of the case, which motion was denied by the court, and a judgment for the full amount sought was rendered in favor of the plaintiff. In due course a motion for new trial was made and overruled, and this appeal was taken.

Substantially defendant's assignments of error and supporting propositions of law present three questions:

1. Do the pleadings and the evidence disclose any contractual relationship between plaintiff and defendant, or any possessory right over the shipment by plaintiff, under and whereby defendant would be obligated to stop the shipment as requested by plaintiff, or which would entitle plaintiff to enforce a stop order against the shipment by notice to defendant?

2. Do the provisions of the Federal Bill of Lading Act, which relieves a carrier from liability for wrongful delivery of shipment unless the carrier has been requested by the person having the right of property or possession in the goods not to make such delivery, relieve the defendant from liability under the facts in this case?

3. Is the defendant relieved from liability under the law which protects carriers under a straight bill of lading providing for delivery to a named consignee, in making delivery to such consignee without the surrender of such bill of lading at the time of delivery?

There is no merit in defendant's contention that the complaint fails to dis-

close any contractual relationship between it and the plaintiff. Plaintiff alleges in paragraph three of its complaint that it, as customs broker for one Carlos Tang, shipped by defendant's railroad the goods in question, "billed under broker's notice No. 1510 and cleared under entry No. 188, said car load lot rolling under an open bill of lading with plaintiff's draft attached for border crossing expenses and fees attached thereto to be presented to the consignee by the Pan American Trust lCompany of New York, N. Y." By the third paragraph of defendant's answer it admitted all of the allegations of paragraph three, save and except the allegation that plaintiff was acting as customs broker for one Carlos Tang.

The testimony clearly shows that the plaintiff was acting in the capacity of customs broker in so far as this shipment was concerned. It received from the purchaser's bank the bill of lading, and in good faith made the expenditures necessary to pass the shipment through the customs. The plaintiff acted in good faith. Apparently it believed itself to be acting in the capacity of broker for the seller Tang. It is obvious, however, that plaintiff would never have made these expenditures and taken the necessary steps to put the shipment through customs had it not been for the fact that the bill of lading had been sent to it through the bank of the purchaser Rountree. Under these circumstances, it would be highly inequitable to allow Rountree to profit at the expense of the plaintiff. The plaintiff could not, in this situation, be considered as a mere volunteer or interloper. Rountree might have a cause of action against his own agent, the bank, but in view of the bank's action in sending the bill of lading to plaintiff, he could not, as against it, deny responsibility for the expenditures made. The railroad company would have no better right to question the validity of the Agencia's action and its status as customs broker than Rountree would have had.

The defendant having admitted that plaintiff was the shipper over its railroad, the sole question, as we see it here, is whether the expenditures made by plaintiff under the circumstances mentioned gave it any right of property or possession in the goods in transit which, under the law, would make the railroad company liable for delivery after plaintiff had notified it not to make such delivery.

It is true that customs brokers do not usually possess the right of a general lien, but there may be situations in which they are authorized to exercise a lien right. 12 C.J.S., Brokers, § 99, p. 235. It is our view that in the case at bar the plaintiff had the right to claim possession of the goods shipped to secure its expenditures. Not only was the original bill of lading addressed to the consignee, in care of plaintiff at Nogales, but it was actually delivered to it at Nogales by the purchaser's agent, the Mexican bank. The shipment could not enter the United States and be

taken over by the defendant railroad company until the customs were paid. The evidence discloses that plaintiff was engaged in the business of acting as a customs broker or agent. Upon the delivery to it of the bill of lading in question, it had the right to accept it as security for the expenditures necessary to pass the goods through the customs. The bill of lading under these circumstances may be deemed to have been transferred to plaintiff at least as security for its charges and expenditures. The plaintiff retained the bill of lading, attached its draft for expenditures and sent it to its New York bank for presentation to the purchaser. Payment being refused, plaintiff made demand on defendant while the goods were still in its possession not to deliver to the consignee until its charges were paid.

Under the law relating to bills of lading respecting interstate shipments, it would seem that defendant company has no defense to plaintiff's action. Title 49 U.S. C.A. § 109, Transportation, provides:

"A bill may be transferred by the holder by delivery, accompanied with an agreement, express or implied, to transfer the title to the bill or to the goods represented thereby. A straight bill can not be negotiated free from existing equities, and the indorsement of such a bill gives the transferee no additional right."

A straight bill of lading such as is involved in this case may be assigned or transferred by delivery. Gubelman v. Panama R. Co., 192 App.Div. 165, 182 N.Y.S. 403, affirmed 232 N.Y. 566, 134 N.E. 574. The transferee in such case acquires against the transferor the title to the goods subject to the terms of any agreement between them. Here there was no direct agreement shown by the evidence either between the plaintiff, the shipper Tang, or the purchaser Rountree. However, from the facts, there arises an implied agreement, to-wit, that plaintiff in pursuance of its usual course of business would make the necessary arrangements and expenditures to pass the shipment through the customs, and that the bill of lading delivered to it would be held by it as transferee as security for its charges and expenditures.

Under the law, the plaintiff as transferee of the bill of lading as against the carrier acquired the right to notify it of the transfer of the bill to plaintiff, and became entitled to the rights that the transferor had immediately before such notification. When a consignor ships under a straight bill of lading the goods remain subject to his control and he has the right to stop them in transit. Tennessee Egg Co. v. Monroe, 151 Tenn. 121, 268 S.W. 372; Interstate Window Glass Corporation v. New York, N. H. & H. R. Co., 104 Conn. 342, 133 A. 102. Likewise, a consignee in a straight bill of lading has the right to divert or stop the goods during transportation "subject to the qualification that he does not possess this right where the car-

rier has been requested by the person having the right of property not to permit it." Continental National Bank of Los Angeles v. Tremont Trust Co., 1 Cir., 4 F.2d 219, 221. These decisions are based upon the provisions of Title 49 U.S.C.A. § 112, Transportation:

"A person to whom a bill has been transferred, but not negotiated, acquires thereby as against the transferor the title to the goods, subject to the terms of any agreement with the transferor. If the bill is a straight bill such person also acquires the right to notify the carrier of the transfer to him of such bill and thereby to become the direct obligee of whatever obligations the carrier owed to the transferor of the bill immediately before the notification."

It is our view that plaintiff had a right of property or possession in the goods which would authorize it to request the defendant not to make delivery to the consignee named in the straight bill of lading. Defendant, therefore, cannot maintain its defense under the provisions of Title 49 U.S.C.A. § 89, Transportation, which provides that "A carrier is justified, subject to the provisions of the three following sections, in delivering goods to one who is—* * * (b) The consignee named in a straight bill for the goods, * * *." In the following section (90), the provision is made that a delivery as provided in section 89 will not justify the carrier if prior to such delivery the carrier "(a) Had been requested, by or on behalf of a person having a right of property or possession in the goods, not to make such delivery, * * *."

We think it unnecessary to consider other questions raised by defendant on this appeal, particularly that relating to the liability of connecting carriers. In view of the admission made by the defendant in its pleadings that the plaintiff shipped by its railroad, etc. the goods in question, we treat the defendant as an initial rather than a connecting carrier.

The judgment is affirmed.

STANFORD, C. J., and LA PRADE, J., concur.