Great Northern Railway Company, Respondent, vs. Hocking Valley Fire Clay Company, Appellant.

*December 5, 1917—January 5, 1918.*

*Carriers: Liability of consignor for transportation charges: Bill of lading: Liability of consignee: Delivery: Waiver of lien: When note constitutes payment.*

1. The consignor of freight with whom the contract of shipment is made is liable to the carrier for the transportation charges unless there is an express agreement between them exempting him from such liability; and the carrier may also look to the consignee to whom the goods are actually delivered for the payment of the freight charges.
2. A condition, printed on and made a part of the bill of lading, that "the owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery," does not affect the liability of the consignor for such charges.
3. Where goods had been rejected by the consignee upon their arrival at destination, and had been held at that point for several

days, an agreement between the consignor, the consignee, and a corporation from which the consignee had ordered the goods, that they should be delivered to the consignee upon his promise to pay the freight and demurrage charges, did not discharge the consignor from liability for the freight charges.

4. Nor did the delivery of the goods, in such case, by the carrier without collecting the freight charges from the consignee, discharge the consignor; it merely released the carrier's lien on the goods.

5. A finding by the trial court in such case that notes given by the corporation from which the goods had been ordered, to the carrier, for the amount of the freight and demurrage charges, did not constitute payment of such charges, is *held* to be sustained by the evidence.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This is an action by the plaintiff railway company to recover freight charges and demurrage from the defendant, the *Hocking Valley Fire Clay Company,* a corporation which manufactures salt-glazed brick at Nelsonville, Ohio.

Three carloads of brick were shipped on October 27th and 28th by the defendant to the Bailey-Marsh Company, contractors at Crookston, Minnesota. The brick was shipped via the Hocking Valley Railway Company, initial carrier, through intermediate carriers, to the *Great Northern Railway Company,* delivery carrier, and by them to Crookston, Minnesota. This brick had been ordered by the Bailey-Marsh Company from the Paine & Nixon Company of Duluth, Minnesota, who, in turn, bought it from the defendant. The brick was ordered by the Bailey-Marsh Company from a sample submitted to it and the school board of Crookston by the Paine & Nixon Company. When the brick arrived on November 7th and 10th it was immediately rejected by the Bailey-Marsh Company because of an alleged difference in the brick sent and that ordered. The Paine & Nixon Company were notified of the rejection, and they in turn notified

the defendant.  The plaintiff never notified the defendant of the rejection.

The brick was left on the usual and customary place of unloading cars upon the tracks of the plaintiff until December 9, 1913, when, through an arrangement between the Bailey-Marsh Company, the Paine & Nixon Company, and the defendant, the brick was delivered to the Bailey-Marsh Company on the latter's agreement to pay the freight and demurrage.  The Paine & Nixon Company also agreed with the plaintiff that it would see to it that the freight and demurrage charges were paid, and on February 4, 1915, the Paine & Nixon Company gave the plaintiff a promissory note for the amount of the freight and demurrage charges, and at maturity, a year later, renewed the note.  No part of the freight and demurrage charges has ever been paid.

The court found that according to the terms of the bill of lading signed by the defendant and the agent of the plaintiff (Conditions, sec. 8), "the owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery. If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped;" that the freight charges for the brick were $644.76; that the demurrage which accrued on the cars during the time they stood unloaded upon the tracks of the plaintiff amounted to $68; that while the brick stood unloaded upon the tracks of the plaintiff an agreement was entered into on or about the 26th day of November between the defendant and the Paine & Nixon Company by which the defendant was to pay the demurrage on the cars up to November 29th, and that thereafter, on or about the 10th day of December, the Bailey-Marsh Company accepted the cars and caused them to be unloaded; that neither the original note given by the Paine &

468     SUPREME COURT OF WISCONSIN.     [Jan.

Great Northern R. Co. v. Hocking Valley F. C. Co. 166 Wis. 465.

Nixon Company to the plaintiff nor the renewal note was given as payment of the freight and demurrage charges, but were given as security for the payment thereof; that the defendant did not at any time until after the brick had been delivered at Crookston notify or advise the initial carrier, the Hocking Valley Railway Company, nor the intermediate carriers, nor the plaintiff, the delivery carrier, that it was acting as agent of the Paine & Nixon Company or of any other firm or corporation; that the brick was sold by the defendant to the Paine & Nixon Company, and that the order therefor, signed by the Paine & Nixon Company, specified the kind and quality of brick desired and the railroads over which it should be carried; that the brick shipped by the defendant was of the kind, quality, and quantity ordered by the Paine & Nixon Company; that in contracting for the shipment of brick the defendant acted as the agent of the Paine & Nixon Company; that the defendant was in no wise responsible for the temporary rejection of the brick by the consignee at Crookston, nor for the delay in unloading; that the plaintiff, though notified by the consignee of the rejection, did not notify the defendant that the brick had been rejected and was being held unloaded on the tracks nor that demurrage against the defendant would accrue in consequence thereof; that the Paine & Nixon Company expressly promised and agreed with the plaintiff that in consideration of the delivery of the brick to the Bailey-Marsh Company it would be security for the payment of the freight and accrued demurrage charges, and that such promise was an inducing cause for the delivery of the brick and to the waiver of the carrier's lien for its charges.

Judgment was entered against the defendant awarding the plaintiff the freight charges, $885.84, and $51.75 costs and disbursements, and dismissing the plaintiff's cause of action as to demurrage charges. This is an appeal from such judgment.

5]                   JANUARY TERM, 1918.                   469

Great Northern R. Co. v. Hocking Valley F. C. Co. 166 Wis. 465.

*W. M. Steele* of Superior, for the appellant.

For the respondent there was a brief by *J. A. Murphy* and
*R. I. Tipton* of Superior, and oral argument by *Mr. Tipton.*

SIEBECKER, J.   The law is well established that the con-
signor of freight with whom the contract of shipment is made
is liable to the carrier for the transportation charges unless
there is an express agreement between the consignor and
carrier exempting the consignor from such liability.   The
carrier may also look to the consignee to whom the goods are
actually delivered for the payment of the freight charges.
The consignor's liability rests upon the agreement of the
parties arising out of the transactions between them.   In
*Blanchard v. Page,* 8 Gray (74 Mass.) 281, 290, it is said:

". . . Upon the ordinary contract of shipment, manifested
by a bill of lading, made by one party and accepted by the
other, . . . mutual obligations arise between the contracting
parties, on the one side to carry the goods, and on the other
to pay the stipulated compensation for that service; that
these are mutual considerations for each other, and make
them legal obligations on which actions will lie."

Cases dealing with the consignor's liability are collected
in a note to *Coal & Coke R. Co. v. Buckhannon River C. &
C. Co.* (W. Va.) 87 S. E. 376, L. R. A. 1917A, 665 *et seq.*

Applying this rule of liability to the instant case upon the
facts found by the court, it follows that defendant is liable
as consignor of the shipment of brick unless it appears that
it was relieved therefrom under the facts and circumstances
of the case.

It is contended that condition 8 (see above statement),
printed on the back of the bill of lading and made a part
thereof, is an express agreement by which the owner or con-
signee of the brick is made liable for the freight charges, and
operates to release the consignor from liability.   The bene-
fits accruing to the carrier under the terms of this condition

of the bill of lading do not embrace an agreement releasing the consignor. The condition confers on the carrier the right to collect the freight from the owner or consignee without changing the liability of the consignor. See *Coal & Coke R. Co. v. Buckhannon River C. & C. Co., supra.*

The court held that the agreement made between the Paine & Nixon Company and the defendant for delivery of the brick to the Bailey-Marsh Company after the shipment had been held at Crookston for several days, upon the promise of the Bailey-Marsh Company to pay the freight and demurrage charges, did not operate to discharge the defendant as consignor from liability for the freight charges. We think the record fully supports this conclusion of the trial court. These transactions disclose nothing to warrant the inference that the plaintiff intended to release the defendant from its obligation to pay the freight charges. Nor does the delivery of the brick by the plaintiff to the Bailey-Marsh Company without collecting the freight charges discharge the defendant. This delivery, under the facts shown, did no more than release the carrier's lien upon the freight. The carrier retains the right to collect the claim against the other parties liable therefor.

It is urged that the court erred in finding that the giving of a note by the Paine & Nixon Company for the amount of the freight and demurrage charges to the plaintiff on February 4, 1915, and the renewal thereof at the expiration of a year, did not constitute payment thereof. Upon the evidence adduced we cannot say that the court's conclusion on this issue of fact is clearly wrong. The transactions of the parties leading to the execution of these notes tend to show that they were given to evidence the plaintiff's claim against the maker for the freight and demurrage charges, but there is nothing in the transaction to warrant the inference that the notes were taken in payment of the claim.

We find the evidence in harmony with the court's finding that defendant did not notify the original or other carriers

that it acted only as agent for the Paine & Nixon Company in making the delivery of the brick to the carrier at Nelsonville, Ohio, and that such carrier received the brick for shipment upon such understanding, and hence the defendant is liable for the freight charges. Under the facts and circumstances of the case there is no express release by the carrier of the defendant's liability for the freight charges as consignor. We find no reversible error in the record.

*By the Court.*—The judgment is affirmed.