CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY,
Respondent, vs. PETERSON and others, Appellants.

*November 6—December 3, 1918.*  .

*Carriers: Interstate commerce: Liability of consignor for freight
charges: Bill of lading: Delivery: Waiver of lien: Custom
and usage.*

1. Upon an interstate shipment of merchandise the consignor is
   primarily liable for the freight charges, although the bill of
   lading provides that "the owner or consignee shall pay [such
   charges] and, if required, shall pay the same before deliv-
   ery;" and failure of the carrier to collect the charges from
   the consignee, even though the lien therefor on the goods is
   thereby lost, is no defense against such liability of the con-
   signor.
2. No alleged custom or usage as to a certain commodity, that
   the carrier should, before delivery thereof, collect the freight
   charges from the person presenting the bill of lading at the
   point of destination, can be shown to alter the relations be-
   tween shipper and carrier under the laws and rules regulating
   interstate commerce, or to create a preference in favor of
   the shippers of that particular commodity.

APPEAL from an order of the circuit court for Waupaca
county: BYRON B. PARK, Circuit Judge. *Affirmed.*

From the pleadings it appears that the defendants, co-
partners engaged in the produce business, shipped two car-
loads of potatoes from Waupaca county in this state to In-
dianapolis, Indiana, and were sued by plaintiff, a common
carrier, for the freight charges.

The defendants as consignors made themselves consign-
ees, with directions to the plaintiff to notify a prospective
customer by the name of Wilkerson at Indianapolis.

In each of the bills of lading was a provision that the
charges were guaranteed by the shipper and a further clause
as follows: "Section 8. The owner or consignee shall pay
the freight and all other legal charges accruing on said prop-
erty, and, if required, shall pay the same before delivery.
. . ."

Defendants drew a draft on Wilkerson for each shipment at the invoice price *less freight charges,* attached the drafts to the respective bills of lading, sent them to a bank in Indianapolis, where they were received and paid for by Wilkerson or someone to whom he had sold the potatoes, and upon presentation of the bill of lading to the plaintiff the potatoes were delivered without requiring the prepayment of the freight charges.    The defendants interposed, by way of defense to their otherwise admitted liability, their claim that the plaintiff through its own negligence failed to collect the freight charges from the person to whom the potatoes were so delivered at the time of the delivery, and that such failure was in violation of what was claimed to be a long established custom or usage among shippers of potatoes and railroad companies that the railroad companies should collect their freight charges from the person presenting the bill of lading at the point of destination and before delivery.

The trial court sustained the plaintiff's demurrer to such alleged defense, and from the order sustaining such demurrer the defendants appeal.

*John C. Hart* of Waupaca, for the appellants.

For the respondent there was a brief by *Browne, Browne & Smith* of Waupaca, attorneys, and *C. C. Hine* of Chicago, of counsel, and oral argument by *L. D. Smith.*

ESCHWEILER, J.    In interstate shipments of merchandise upon such bills of lading as were issued in this case the consignor is primarily liable for the freight charges, and the failure on the part of the common carrier to collect the freight charges from the consignee under the provisions of section 8 of the bill of lading, set forth in the statement of facts, even though thereby it loses its lien on the freight for such charges, is no defense.    *Great Northern R. Co. v. Hocking Valley F. C. Co.* 166 Wis. 465, 166 N. W. 41.

The effect of the alleged custom or usage would be to substantially vary the express language of the bill of lading

itself by making the person to whom the shipment was delivered, instead of the shipper, primarily liable, and because it would have such a contradictory effect proof of such alleged custom cannot properly be allowed. *Mowatt v. Wilkinson,* 110 Wis. 176, 85 N. W. 661; *Francis H. Leggett & Co. v. West Salem C. Co.* 155 Wis. 462, 471, 144 N. W. 969; *State ex rel. News Pub. Co. v. Park,* 166 Wis. 386, 390, 165 N. W. 289; *Furness, Withy & Co. v. Randall,* 124 Md. 101, 91 Atl. 797, 800; *Portland F. M. Co. v. British & F. M. Ins. Co.* 130 Fed. 860.

The relations between common carriers and shippers are no longer mere matters of contract, but are fixed by the laws and rules regulating such interstate commerce and partake of the nature of statutory obligations. *Armour P. Co. v. U. S.* 209 U. S. 56, 82, 28 Sup. Ct. 428; *New York, N. H. & H. R. Co. v. York & Whitney Co.* 215 Mass. 36, 40, 102 N. E. 366.

To give this alleged custom, therefore, the effect asked for by the defendants in this case would be to place them as shippers in a different and necessarily more favored position than other merchandise shippers in the same locality in whose favor no such custom existed. There can be no such preferences lawfully given or created by any agreements between carriers and shippers under the interstate commerce law. *Atchison, T. & S. F. R. Co. v. F. H. Stannard & Co.* 99 Kan. 720, 162 Pac. 1176; *Wells Fargo & Co. v. Cuneo,* 241 Fed. 727.

The ruling of the court below in sustaining the demurrer to such defense was correct.

*By the Court.*—Order affirmed.