Missouri Pacific Railroad Company *v.* Pfeiffer Stone Company.

Opinion delivered November 17, 1924.

1. Carriers—liability of consignor for freight charges.—A carrier, contracting with a consignor to transport goods, may look to him for payment of the freight charges, waiving its lien on the goods by delivering them to the consignee.

2. Carriers—delivery of goods to consignee.—Stipulation in a bill of lading that the goods are to be delivered to the consignee, "he paying freight," is for the carrier's benefit, and delivery to the consignee without collecting the freight will not discharge the consignor, in the absence of special stipulations to that effect.

3. Carriers—recovery of difference between interstate and contract rate.—On interstate shipments a carrier can compel the shipper to pay the difference between legally established interstate rates and a lower rate fixed by contract and collected by mistake or otherwise.

4. Carriers—departure from schedule of interstate rates.—A carrier cannot depart to any extent from its published schedule of rates for interstate shipments without incurring the penalties of the act of Congress.

5. Limitation of actions—action to recover freight charges.—An action by an interstate carrier to recover the difference between the interstate rate and a contract rate is an action on writing, and is governed by the five-year statute of limitation (Crawford & Moses' Dig., § 6955).

Appeal from Independence Circuit Court; *Dene H. Coleman*, Judge; reversed.

STATEMENT OF FACTS.

This as an action by the Missouri Pacific Railroad Company against the Pfeiffer Stone Company to recover

a balance of freight charges which, through the carrier's mistake, had not been claimed or collected at the time of the delivery of the stone.

The case originated in the justice court, and was appealed to the circuit court and tried there on an agreed statement of facts.   The action is based upon a shipment of cut stone by the Pfeiffer Stone Company, a corporation, from Pfeiffer, Arkansas, to Alexandria, Louisiana.   The shipment was made on the 21st day of April, 1917, and the weight of the stone was 44,700 pounds.   The freight collected was based upon a rate of 12 cents per cwt., making a total of $53.64.   The shipment of stone was consigned to the Hudson Construction Company, at Alexandria, Louisiana, f. o. b. cars at Pfeiffer, Arkansas.

The bill of lading issued at the time of the shipment was introduced in evidence.   The published tariff rates of the Interstate Commerce Commission upon cut stone is 34 cents per cwt.   This made an undercharge difference of $98.34, which is sought to be recovered in this suit.

The circuit court was of the opinion that the Pfeiffer Stone Company was not liable because it ceased to be the owner of the stone shipped when it was delivered to the carrier, and was also of the opinion that the claim was barred by the statute of limitation of three years.

From the judgment against it the railroad company has appealed to this court.

*Thos. B. Pryor* and *Ponder & Gibson*, for appellant.

A consignor with whom a contract of shipment is made is liable for the charges provided for therein. 6 Cyc. p. 500; 85 Am. Dec. 707; 8 Gray (Mass.) 281; 15 Am. Dec. 615.   97 Ark. 353; 24 A. L. R. 1160.   Even though the bill of lading provides for the delivery of the goods to the consignee on his paying freight, the consignor remains liable on his contract.   69 Am. Dec. 74; 47 Am. Dec. 162; 23 N. C. 236; 10 Watts (Pa.) 384; 10 C. J. 445; 130 Fed. 860.   When a consignee does not pay the proper amount of freight charges, an interstate carrier may look to the shipper, and is not required to sue the consignee.   241

Fed. 727; 130 Fed. 860.  The collection of a less rate than that fixed by law does not relieve the shipper of paying the true amount.  49 L. R. A. (N. S.) 92; 100 Ark. 221. A bill of lading represents a written contract between the shipper and carrier.  118 N. Y. Supp. 982; 243 U. S. 592; 251 Fed. 230; 127 Ark. 247.  And actions thereon may be brought within five years after the cause of action accrues. C. & M. Dig., § 6956.  A carrier, upon the performance of its contract to transport goods to another State, may sue in a State court to recover, as its right of recovery is based upon contract.  97 Ark. 354.

*McCaleb & McCaleb,* for appellee.

Appellant's claim is barred by the statute of limitations.  The bill of lading was not a written contract, as it does not show the amount of freight to be paid.  A contract partly in writing and partly oral is in legal effect an oral contract, and governed by the period of limitations for oral contracts.  25 Cyc. 1042; 5 N. E. 408; 12 N. W. 780; 49 Atl. 66.  Where parol evidence is necessary to establish a part of the contract, it is treated as an oral contract.  32 N. E. 424.  See 47 Ark. 317.  The right to recover on an implied contract is limited to three years. 67 Ark. 27; 47 Ark. 301; 99 Ark. 105.

Hart, J., (after stating the facts).  As stated, this is an action to recover a balance of freight charges which, through the carrier's mistake, had not been collected at the time of the delivery of the goods.  The shipment was an interstate one, and the undercharge resulted from a mistake made by the agent of the carrier in putting a less rate in the bill of lading than that established by the Interstate Commerce Commission and promulgated by the railroad company on its tariff or rate sheets.  *St. L. I. M. & S. R. Co. v. Faulkner,* 111 Ark. 430; *K. C. & Memphis Ry. Co. v. Oakley,* 115 Ark. 20; and *St. L. I. M. & S. R. Co. v. Starbird,* 243 U. S. 592.

These cases and many others hold that the Carmack Amendment requires the receiving carrier to issue a through bill of lading, and makes that bill of lading the contract of shipment.

In the case before us, the Missouri Pacific Railroad Company, as a common carrier, entered into a contract with the Pfeiffer Stone Company whereby it agreed to transport a car of stone from Pfeiffer, Arkansas, to Alexandria, Louisiana.  In such cases the carrier had the right to look to the consignor or owner of the goods for the payment of the freight, and it may waive its lien upon the goods by delivering them to the consignee and still hold the consignor liable upon the contract of shipment. *St. L. S. W. R. Co.* v. *Gramling,* 97 Ark. 353.

In the case note to 24 A. L. R. 1163, the general rule is declared to be that stipulations in a bill of lading that the goods are to be delivered to the consignee, "he paying freight," or any similar provision, are for the benefit of the carrier, so that delivery to the consignee without collection of the freight will not release the consignor from liability therefor, in the absence of a special stipulation to the contrary.  Many decisions of various courts of last resort of the different States are cited in support of the rule.  The rule is well established that, on interstate shipments, a carrier can compel the shipper to pay the difference between the legally established interstate rate and a lower rate quoted or collected by mistake or otherwise. *Louisville & N. R. Co.* v. *Allen* (Ky.), 153 S. W. 198; *New York, N. H. & H. R. Co.* v. *York & Whitney Co.* (Mass.), 102 N. E. 366; and *Central R. Co.* v. *Mauser* (Penn.), 49 L. R. A. (N. S.) 92, and case note.

The reason given is that the aim of the Interstate Commerce Act is to secure for each and every shipper of goods in interstate commerce absolute equality of reasonable rates, without discrimination or preference. No excuse which operates as an evasion of the rates established by the Interstate Commerce Commission and promulgated by the carrier, has any standing as a matter of law in defense of a proved violation of such rate. It is now the established rule that a carrier cannot depart to any extent from its published schedule of rates for interstate transportation on file without incurring the penalties of the act of Congress. *Louisville & Nashville*

*R. R. Co.* v. *Mottley*, 219 U. S. 467.  The schedule of rates, when established by the Interstate Commerce Commission and promulgated by the carrier, becomes a rate established by law, and cannot be varied by the act of the parties.

The tariff on file necessarily entered into and formed a part of the contract of shipment by the mere operation of law.  *Texas & Pacific Ry.* v. *Mugg*, 202 U. S. 242. Hence it is immaterial that the bill of lading had a less rate than the tariff rate on cut stone.  It was beyond the power of the parties to make a valid contract for a less rate than the published schedule filed with the Interstate Commerce Commission, and, notwithstanding a contract of this kind, the shipper is liable for the undercharge. If the rate did not prevail, the act of Congress would be ineffectual to secure uniformity in the treatment of all shippers and to prevent special and secret agreements with respect to rates for interstate transportation.

It is sought to uphold the judgment upon the authority of *Louisville & Nashville Railroad Co.* v. *Central Iron & Coal Co.*, 265 U. S. 59.  In that case it was held that, in the absence of a governing tariff provision, delivery of the goods for shipment does not necessarily import an obligation of the shipper to pay the freight charges, and the carrier and shipper are free to contract as to when and by whom payment shall be made, subject to the rule against discriminations.  The ruling of the court and the facts upon which it is based are stated in the third syllabus as follows:

"Where bills of lading acknowledged receipt of goods from the shipper but provided for delivery to the order of another as consignee, were not signed by the shipper, and contained no express agreement on his part to pay or guarantee payment of the freight charges, and there was evidence that the goods were sold and shipped by the shipper to the consignee upon agreement between them that the latter should pay those charges, and were transferred by the consignee with the bills of lading to a third party, who received delivery from the

carrier, *held,* that a finding that the shipper did not assume the primary obligation to pay the freight charges was justified.''

The facts in the case before us are essentially different. The bill of lading recites that the freight is received at Batesville, Arkansas, at the Pfeiffer quarry from the Pfeiffer Stone Company. It is consigned to Hudson Construction Company, at Alexandria, La. The Pfeiffer Stone Company is named as shipper. The bill of lading purports to be a contract between the consignor and the railroad company, and recites that every service to be performed by the railroad company shall be subject to all the conditions on the back of the bill of lading. It recites that these conditions are agreed to by the shipper and accepted for himself and his assignees.

Section 8 of the conditions on the back contains the following:

''The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery.''

If it be conceded that the words ''owner'' and ''consignee'' are synonymous, it was not the purpose of § 8 to relieve the consignor from liability on his contract. The clause was inserted for the carrier's benefit and is intended as notice of the carrier's legal rights. Without that clause the consignee, if owner, is bound, by accepting the goods, to do all that § 8 requires him to do. The carrier's right to collect the freight charges from the consignee does not release the consignor in the absence of a special contract to that effect. The carrier may collect the freight from either. The consignor is bound on its express contract when it signs the bill of lading, and the consignee is bound on its promise implied by its ownership and acceptance of the stone.

We are therefore of the opinion that the Pfeiffer Stone Company, the shipper and consignor of the stone shipped, is liable to pay the undercharge in freight, and that there is nothing in the record upon which to base a

finding by the circuit court that the consignor made a special contract with the railroad company exonerating it from the payment of the freight.

It is next contended that the cause of action is barred by the statute of limitations, and reliance is placed upon *C. R. I. & P. Ry. Co.* v. *Lena Lumber Co.*, 99 Ark. 105, to sustain this contention. In that case the suit was brought by the shipper against the carrier to recover an overcharge in freight. There the contract was at an end, and the shipper brought an action for money had and received to recover the excess charge. The action was founded upon an implied contract, not in writing, to return the overcharge which had been paid by mistake, and we held that § 5064 of Kirby's Digest (6950 of Crawford & Moses' Digest), applied.

In the case before us the carrier sued the shipper for a balance due on freight, and relied upon the contract to recover. As we have already seen, the bill of lading was the contract of shipment between the parties, and the tariff or rates on file became as much a part of the contract as if written in it. Therefore the bill of lading was a contract in writing, and the five-year statute of limitations governs. This holding is in accordance with the decision in *C. R. I. & P. R. Co.* v. *Cunningham Commission Co.*, 127 Ark. 246. In that case it was held that a shipper of freight may recover damages for the delay in the transportation and delivery of freight in an action founded on contract, and that the five-year statute of limitations applied.

In the case before us, the undisputed evidence shows that the suit was brought within five years, that the shipment was an interstate one, and that the undercharge sought to be recovered amounts to $98.34.

The result of our views is that the judgment must be reversed, and, because the facts are undisputed, judgment will be entered here in favor of appellant against appellee in the sum of $98.34, with six per cent. interest from November 2, 1923, the date of the judgment in the circuit court.

It is so ordered.