SWIFT & COMPANY v. FORT SMITH & WESTERN RAILWAY COMPANY.

Opinion delivered May 13, 1929.

*William N. Strack* and *Daily & Woods,* for appellant.
*Warner & Warner,* for appellee.

SMITH, J. This suit was brought by appellee, Fort Smith & Western Railway Company, against appellant, Swift & Company, to recover certain alleged undercharges on freight shipped by appellant over appellee's railroad. The alleged undercharges covered a period extending from May 1, 1924, to January 22, 1927, and included 125 different less than carload shipments of butter, eggs and dressed poultry. These shipments all moved over the railroad of the appellee and of the Missouri Pacific Railroad Company, a connecting carrier.

Appellant paid the freight demanded, which was based on rates expressed in cents per 100 pounds, and, in addition thereto, paid appellee for the refrigeration furnished in connection with these shipments. At the time each of these shipments moved there was no contention on the part of appellee that appellant was not paying proper charges for the transportation services rendered by appellee.

Numerous freight tariffs approved by the Interstate Commerce Commission were offered in evidence, one of

which provides for the rates in cents per 100 pounds for the transportation of butter, eggs and dressed poultry, specifying a minimum weight of 100 pounds for each shipment, and it is the contention of appellant that this is the only minimum weight which is applicable to the shipments herein. On the other hand, appellee contends that the shipments were made under and are governed by rule 630 of the perishable protective tariff approved by the Interstate Commerce Commission.

Rule 630 provides, in part, as follows:

"Unless otherwise specifically provided, in separate tariffs of carriers parties to this tariff, carriers, upon reasonable notice, will furnish or will allow shippers to use or will participate with connecting carriers in handling refrigerator cars to be loaded by shippers at their own expense with freight as specified below when moving on basis of less than carload or any quantity freight rates and covered by tariffs governed by Official, Southern or Western Classifications, as they may respectively apply (except 'meat peddler cars', for which see rule 625), when aggregate weight is not less than 15,000 pounds per car or when freight charges are assessed on basis of 15,000 pounds per car. (See Exception No. 4). This rule will apply only as follows * * *

"Between points governed by Southern Classification.

"3. From one consignor at one point of origin to one consignee at one destination. (See paragraph F).

"On shipments of butter, * * * eggs, * * * dressed poultry, * * * in straight or mixed lots, no charge will be made for icing, re-icing or refrigeration. (See exceptions).

"4. Any deficit in weight will be charged for on basis of freight rate applicable to the highest rated commodity contained in the car."

On January 31, 1927, after the last of the shipments in question had been made, the assistant traffic manager of appellant wrote a letter, a copy of which was sent to

the freight claim agent of appellee, which appears to have precipitated this litigation. This letter reads as follows:

"R. C. Dearborn, Chairman

"National Perishable Freight Committee,

"Chicago.

"Dear sir: We are in controversy with Mr. F. R. Spurgin, F. C. A., Fort Smith & Western Ry., regarding overcharges on numerous shipments of dressed poultry, butter and eggs, moving from Oklahoma City, Okla., to points on or via his line in Arkansas and Louisiana. Mr. Spurgin has refused to honor our claims on 15,000-lb. cars based on rule 630 of your tariff. An illustration of the shipments involved is as follows:

"S. R. L. 22191 was forwarded from Oklahoma City, Okla., by our produce plant on April 2, 1925, containing shipments of butter as follows:

| | |
|---|---|
| 2088 lb. | Monroe, La. |
| 5074 lb. | Pine Bluff, Ark. |
| 2508 lb. | Alexandria, La. |
| 1040 lb. | Ft. Smith, Ark. |
| 3956 lb. | Little Rock, Ark. |

"Our claim was based on paying freight charges on the deficit of 344 lb. at the 4th class rate of 76c to the first destination in the car, which was Fort Smith, Ark., observing, however, minimum revenue based on the 4th class rate at 15,000-lb. to the final unloading station, which was Alexandria, La. We asked the carrier to refund all icing charges, both initial and re-icing, and assess only transportation charges based as outlined above. Mr. Spurgin informs us that he must decline the claim, because it is not filed in accordance with the manner in which the tariff is issued. Will you kindly interpret rule 630 for Mr. Spurgin, referring his claim No. 65443 and letter of January 27, sending us a copy of your interpretation, referring to our claim PO-815527."

The particular shipment there referred to is typical of all the others. In each of the 125 cars the shipper had loaded less than 15,000 pounds of freight, and had iced

the cars at point of origin, and had paid for re-icing when that service had been rendered, and this letter was written to recover the value of this ice.

It is plain, from the above quotation from rule 630, that, if the rule applies to the shipments, it was the duty of appellee to pay the icing charges, and the controlling question in this case is whether rule 630 applies. Upon this question the litigants have reversed positions. Appellant originally demanded to be reimbursed for icing charges which appellee should have borne, because rule 630 so provided, whereas appellant now contends that the rule does not apply. After first denying liability for the icing charges, appellee now concedes this liability, but demands the amount of the undercharge which exists if rule 630 is applicable.

Section 6 of this rule provides that any deficit between the actual weight and the minimum of 15,000 pounds shall be paid by the shipper at the fourth-class rate from the point of origin to the first unloading station of the car, with the further proviso that the freight charges on such a car shall not be less than on 15,000 pounds at the fourth-class rate from the point of origin to the final unloading station of the car.

An auditor of appellee checked each of the 125 shipments in accordance with this § 6 of rule 630, and submitted a statement of the account between the parties if rule 630 applies, after crediting appellant with all proper icing charges. The correctness of this statement as a matter of accounting is not questioned, and, as the court found that the shipments had been made under and were governed by rule 630, judgment was rendered in accordance with the audit.

Appellant contends that the freight was computed and paid pursuant to rule 13 of the Consolidated Freight Classification Tariff No. 3, which provides that:

"The minimum charge for a single shipment of less than carload freight, from one consignor to one consignee, on one bill of lading shall be: (a) If classi-

fied 1st class or lower, for one hundred pounds (100 lb.) at the class or commodity rate applicable thereto.''

It is proper to announce the rules of construction which must be applied in determining which tariff governs. The tariff rates are prepared by the carriers, and are not effective until they are approved by the Interstate Commerce Commission. Like all other similar writings, they are to be construed most strongly against the party preparing them, and all doubts or ambiguities must be resolved in favor of the shipper. So also, if it be found that more than one tariff applies to a particular shipment, the one most favorable to the shipper must be applied. *North Packing & Provision Co.* v. *Director General,* 104 I. C. C. 607, 614; *North American Oil & Refining Corp.* v. *Director General,* 85 I. C. C. 697, 700; *Brenner Lbr. Co.* v. *Director General,* 81 I. C. C. 241, 244; *Louisiana Red Cypress Co.* v. *M. L. & T. R. R. & S. S. Co.,* 95 I. C. C. 159, 160.

We are also of the opinion that appellant is correct in its insistence that rule 630 cannot properly be applied unless it appears that (a) appellant had the exclusive use of the refrigerator cars in which the shipments were made, and (b) its contract entitled it to this use.

Upon this question the testimony was to the following effect: Appellant had a warehouse in Oklahoma City, and branch agencies at the cities in Arkansas and Louisiana to which portions of the shipments were consigned. Appellant's manager at Oklahoma City testified that appellant ordered a refrigerator car each week, and this car was delivered at appellant's place of business to be loaded. Cars were so placed only upon orders given. Appellant's manager at Oklahoma City testified that he did not know whether the cars contained freight belonging to other shippers or not, but he did know that, after he had ordered and loaded cars, they were closed and sealed with appellant's seals, and icing directions were written into the bills of lading by appellant. As to

the icing directions contained in the bills of lading, "It was further agreed that upon each and every bill of lading covering these shipments herein and appearing in the place for re-icing instructions in substance 'Don't re-ice unless delayed in transit.' " After the cars had been thus loaded and sealed, they were taken in charge by appellee and carried to its yards, where they were re-worked by being placed into the trains of which they became a part.

It does not affirmatively appear from the testimony whether, in any case, any freight not belonging to appellant was shipped in any one of the 125 cars. This does not appear to be a fact peculiarly within the knowledge of either party, but the burden of proof on this subject was on appellee, for the reason that it is the plaintiff in the case, and we have said that a showing was essential, not only that appellant had the exclusive use of the cars, but had a contract entitling it to that use.

It is not questioned that rule 630 contemplates the exclusive use of the car by the shipper to whom the bill of lading issues, and we think the inference is fairly deducible, if not irresistible, from the testimony herein summarized, that the shipments were made pursuant to this rule.

The letter from appellant's traffic manager, which is quoted above, was not a casual letter, but was written by an expert who was conversant with the facts upon which the technical question involved would be determined. The cars were specially ordered, and were delivered when ordered, and of this last fact we will later have more to say. After the cars were loaded, the private seal of appellant was placed on them, and the direction was given not to re-ice unless there was a delay, and it is not contended that these instructions were departed from. We think the inference is fair that appellant would not have assumed to give icing directions if it had not had the exclusive right to the car. It could not have known what other freight would be shipped in the

car, nor what its destination was. No doubt appellant sought the expedition in transit which would result from the exclusive use of the car, and this right appears to have been accorded it. The judgment rendered was for $4,756.18, which is an average of only slightly more than $38 per car.

It is not questioned that, if there was an undercharge, appellee had the right and was under the duty of suing to recover the deficit. Section 7 of the Act to Regulate Commerce, Compiled Statutes, § 8569, provides that:

"Nor shall any carrier charge or demand or collect or receive a greater, or less, or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs, than the rates, fares and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device, any portion of the rates, fares and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." *Mo. Pac. Rd. Co.* v. *Pfeifer Stone Co.*, 166 Ark. 226, 266 S. W. 82.

Appellant insists that if any portion of § 6 of the perishable protective tariff schedule applies, it is rule 610, and not rule 630. Rule 610 covers what is called "scheduled refrigerator car service," which is defined in another rule to mean "insulated car service established or operated by carriers on fixed days of the week from specified points to specified points for the handling of 'less than carload' shipments of perishable freight (as defined in item No. 1130), transported over a specified route which interested carriers have authorized." Appellee concedes that if this rule 610 has any application to the facts of this case, it cannot recover; but we concur in its view that this rule does not apply. The rule obviously applies to a car service operated by the carriers on fixed days of the week. No shipper orders

these cars. They move without orders from the shippers, on fixed days, over a defined route, of which all shippers may take notice and ship accordingly.

It is undisputed that each of the 125 cars here in question was specially ordered, and, while most of them moved on the day assigned for the movement of the "scheduled refrigerator car service," this was not true of all of them, as the testimony shows that some of the 125 cars were moved on every day of the week except Sunday. Moreover, there is no testimony whatever that appellee operated insulated car service between the points to which the cars in question were shipped on any day of the week.

The case was heard by consent by the court without a jury, and we must affirm this judgment, so far as the sufficiency of the testimony is concerned, if the testimony tending to support the verdict (and there are no substantial conflicts in the testimony) is, with the inferences reasonably deducible therefrom, legally sufficient to support it. We think the trial court was warranted in finding, as was found, that rule 630 applied, and, this being true, the judgment must be affirmed, and it is so ordered.

KIRBY, J., dissents.