[Civ. No. 282. Fourth Appellate District.—January 26, 1931.]

H. RASMUSSEN, Plaintiff, Cross-Defendant and Respondent, v. PACIFIC FRUIT EXCHANGE (a Corporation), Defendant, Cross-Complainant and Appellant; C. R. SCHLEADEWITZ et al., Cross-Defendants and Respondents.

G. L. Aynesworth and L. N. Barber for Appellant.

N. Linsey South for Respondents.

MARKS, J.—The complaint in this action contains eleven separate causes of action. Plaintiff and his father, M. Rasmussen, were engaged in the joint enterprise of raising Thompson seedless grapes for market. M. Rasmussen and ten others assigned their causes of action against the de-fendant corporation to the plaintiff, who thereupon brought suit against defendant upon his own and the assigned causes of action. Except for the several amounts of grapes delivered, and the several amounts of indebtedness claimed, the causes of action are identical.

It is alleged by plaintiff that on or about the fifth day of July, 1928, defendant entered into a verbal contract with plaintiff and M. Rasmussen whereby they agreed to deliver to defendant Thompson seedless grapes, and defendant agreed to pack and sell said grapes, f. o. b. Miley, California, guaranteeing to the growers the sum of $1.10 less 46 cents charges for the grapes so delivered; that 861 crates were delivered to defendant at said price; that a few days later defendant entered into another and similar agreement with plaintiff and M. Rasmussen whereby they agreed to deliver Thompson seedless grapes to defendant and defendant agreed to pack and sell the same f. o. b. Miley, California, guaranteeing the sum of 90 cents a crate, less 45 cents packing and other charges; that 204 crates were delivered under the terms of this contract; that defendant accepted the delivery of the grapes and advanced plaintiff and his father $238.30 on account thereof, leaving a balance due and unpaid in the sum of $864.86.

Defendant denied the guarantee of a fixed price for the grapes and alleged that they were delivered to it as brokers to sell for the growers upon a commission basis. Defendant further alleged that at the time of making the contract with plaintiff and his assignors it had the grapes sold f. o. b. points of loading, but that the prospective purchasers rejected them, forcing defendant to send the grapes to and sell them at, auction. It is admitted that this was done without the knowledge or .consent of plaintiff and his assignors. Defendant pleads a custom of the trade in justification of such action on its part. The grapes did not sell for sufficient money to pay the advances made by defendant and costs of packing, shipping, inspection and sale.

Defendant filed a cross-complaint to recover its losses from the cross-defendants. The case was tried before a jury which returned a verdict in favor of plaintiff and against defendant on its cross-complaint. Judgment was entered for the plaintiff and the defendant and cross-complainant has prosecuted this appeal.

The sole point made by defendant and cross-complainant, and upon which it relies for a reversal of the judgment, is that the evidence does not sustain the judgment in that it does not show any guarantee on the part of the defendant and cross-complainant that the plaintiff and his assignors would receive the sums claimed by them, and further, that the evidence shows that defendant had the right, by a custom of the trade which constituted a part of its contracts, to ship the grapes to auction and sell them for the best price obtainable after they had been rejected at the California loading points, and charge the losses resulting therefrom to the sellers.

As the sole question on this appeal is whether or not the evidence sustains the judgment, it will only be necessary for us to set forth a synopsis of the evidence most favorable to plaintiff and cross-defendants. If such evidence is sufficient to sustain the judgment it is binding and conclusive upon this court. We cannot set aside the verdict of the jury and reverse the judgment because the evidence is conflicting.

Plaintiff and his father were both called as witnesses to their contracts with defendant. It appears that the contracts were oral and were made with the authorized agents

of defendant. They testified that the agents promised to receive their grapes and guaranteed that the growers would receive $1.10 per crate, less charges thereon amounting to 46 cents. The manager of defendant gave M. Rasmussen the following memorandum: "$1.10 f. o. b. 35 cents packing and 11 commission, 46, and deduct from $1.10 leaving 64 cents net." There was a second agreement under which additional grapes were delivered by plaintiff and his father to defendant and under which defendant promised to sell the grapes f. o. b. Miley, California, and guaranteed that the growers would receive 90 cents a crate less 45 cents charges of packing and sale. Plaintiff and his father were positive in stating that defendant guaranteed these prices to them; that the grapes were to be sold f. o. b. Miley, California, and were to be paid for in cash at the shipping point, and that the grapes were subject to state and county inspection only, which they passed. The testimony of all the other growers was substantially to the same effect except as to the loading points. Two witnesses added the detail that defendant promised to pay for the grapes as soon as they were loaded on the cars.

All of the growers had had considerable unfortunate experience in former seasons in consigning grapes to eastern auction markets through brokers. All refused to consign the grapes in question and insisted that defendant sell them for cash f. o. b. California loading points. None of the growers knew that defendant had shipped the grapes on consignment to eastern auction markets until all of them had been sold there.

Under this testimony, the custom of the trade relied upon by defendant is not applicable. Instances in which customs of the trade may be considered as a part of contracts are clearly set forth in 6 California Jurisprudence, 315, as follows: "Parties who contract on a subject matter concerning which known usages prevail, by implication incorporate them into their agreements, if nothing is said to the contrary. Evidence may be given of usage to explain the true character of a contract or instrument, where such true character is not otherwise plain. In such case usage is an instrument of interpretation. The rule has also been stated as follows: 'Evidence of usage is admitted to annex

incidents to contracts where it is apparent that the parties have omitted to state important parts of their agreements, and the incident so annexed is consistent with the express terms and its inclusion can fairly be presumed to have been intended by the parties.' But usage is admissible only as an instrument of interpretation. Usage should not be regarded at all, unless it be of such a character as may be supposed to have influenced parties; and none can be ordinarily presumed to do this, but such as is public and continued. A usage, of course, cannot be given in evidence to relieve a party from his express stipulation, or to vary a contract certain in its terms. It has been said that the gate to a limitless field for the exercise of chicanery and deceit would be opened if parties were permitted to nullify a contract by evidence of a custom at variance with its terms.''

In the instant case the contracts were definite and contained the distinct agreement that the grapes were to be sold f. o. b. California loading points, subject only to state and county inspection. These contracts would by their terms exclude the purchasers from consigning the grapes to auction without the consent of the growers.

The case of *Glantz* v. *Freedman,* 100 Cal. App. 611 [280 Pac. 704], presents a state of facts almost identical with the one which we are considering. In the Glantz case the court went further than we are required to go in the instant case. It held that the plaintiff could sue the defendant for the reasonable value of his grapes instead of basing his suit upon a guaranteed price. It was held there that the principal may treat the unauthorized sale of his property by a broker as a conversion of the goods. We think that the evidence in the instant case will bring it within the rule of the Glantz case.

Plaintiff and his assignors delivered their grapes to defendant to be sold by it f. o. b. California loading points subject only to state and county inspection. Defendant guaranteed plaintiff and his assignors minimum cash returns for these grapes. Defendant did not sell the grapes f. o. b. California loading points, but consigned them to itself at eastern markets. It was not authorized to do this. Under the express terms of its contracts it therefore becomes liable to plaintiff and his assignors for the minimum price

it guaranteed for the grapes. The record amply supports the judgment.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 17, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1931.