[S. F. No. 14432. In Bank.—January 31, 1935.]

THE NEW YORK CENTRAL RAILROAD COMPANY (a Corporation), Appellant, v. FRANK H. BUCK COMPANY (a Corporation), Respondent.

(Two Cases.)

386

Dunne & Dunne and Dunne, Dunne & Cook for Appellant.

Augustin C. Keane for Respondent.

Athearn, Chandler & Farmer, Frank R. Devlin, Jas. H. Hayes and Walter Hoffman, as *Amici Curiae* on Behalf of Respondent.

THE COURT.—A rehearing was granted in this case to give consideration to the defendant's contention that the facts were not fully nor sufficiently stated in the opinion prepared by the District Court of Appeal, First Appellate District, Division One, and adopted by this court as its decision on the former hearing, and that such further facts, when considered in relation to the other matters appearing and stated, would affect the final decision herein. Upon such reconsideration we are not persuaded that, on the record

before us, any different result is appropriate. We therefore readopt the opinion of said District Court of Appeal as the correct disposition of the issues presented by the record. That opinion is as follows:

"Appeals from the judgments in two separate actions which were consolidated for trial.

"The actions were for the recovery of the authorized tariff or freight on ten cars of grapes shipped by defendant in 1922 from California to different eastern points. The Southern Pacific Co. was the initial carrier. This company issued a straight bill of lading, signed by defendant, covering each car, and in which a representative of defendant or some person other than the fruit company hereinafter mentioned, was designated as the one to be advised upon the arrival of the car. After the cars reached plaintiff's line it was instructed in writing by defendant to divert the same to the latter at Rochester, N. Y., and, with the exception of three of the cars, to advise the Puccia Fruit Company. As to the remaining cars plaintiff was instructed to advise defendant's agent named in the instructions. After the cars arrived at Rochester defendant's authorized agent instructed plaintiff, by writings referring to the several cars, to deliver the same without bill of lading to Puccia Fruit Company 'upon payment of all freight and other charges . . . ' The fruit company was notified and thereafter unloaded the cars, giving plaintiff receipts for their contents. It is conceded that the fruit company had a 24-hour credit arrangement with the plaintiff. This was authorized by a rule of the interstate commerce commission. The cars were delivered to the fruit company without plaintiff having received or demanded any part of the freight or charges due thereon. Subsequently the fruit company became insolvent, and a portion only of the unpaid freight was collected by plaintiff. Defendant had no notice of the fact of nonpayment until December 31, 1923.

"As special defenses defendant alleged that it was the custom to direct delivery of cars, as was done here, and that as part of such custom the word 'advise', as used in the bill of lading or diversion orders, usually meant and was so understood by the carrier to mean that the person 'to be advised has bought or is buying the grapes shipped subject to the payment of freight and other charges thereon, and

that delivery of said shipment shall be made only upon payment of freight and all other charges, or upon notice from the consignor waiving such payment'; that defendant was not the owner of the grapes but the marketing agent for the growers; that this was the customary method of marketing such products, and that the carriers had notice of the facts. Further, that plaintiff 'elected to collect from and extend credit to the fruit company and accepted from the latter its agreement to pay in lieu of payment' of the freight and other charges on delivery; that the fruit company about the time of the expiration of the credit period became insolvent, and that no notice was given to the defendant of the fact of nonpayment for more than a year after such deliveries.

"It is admitted that plaintiff filed claims for the freight against the bankrupt estate, and received dividends aggregating $334.18. There was no dispute as to the amount of the unpaid charges.

"The court found in accordance with defendant's defenses, and plaintiff has appealed from the judgment entered thereon.

"There was no evidence that the carriers knew that the defendant was not the owner of the grapes; and plaintiff contends that in view of the other undisputed facts those specially pleaded and found constituted no defense.

■ "The shipments being interstate, the rights and liabilities of the parties are governed by the acts of Congress as interpreted by the federal tribunals (*Cincinnati, N. O. & T. P. R. Co.* v. *Rankin*, 241 U. S. 319 [36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265]). It was declared in *Louisville & Nashville R. Co.* v. *Central Iron & Coal Co.*, 265 U. S. 59 [44 Sup. Ct. 441, 68 L. Ed. 900], that freight charges on interstate shipments are fixed by law, and no agreement by the carrier can reduce the amount legally payable, or release from liability a shipper who has assumed an obligation to pay the same; nor can any act or omission of the carrier, except the running of the statute of limitations, estop or preclude the carrier from enforcing payment of the full amount by a person liable therefor. ■ But the Interstate Commerce Act does not impose upon the shipper an absolute obligation to pay the charges. As to this the carrier and the shipper are free to contract, subject to the rule which prohibits discrimination. The carrier is

at liberty to require prepayment, or payment may be deferred until the goods reach the end of the transportation (*Wadley Southern Ry. Co.* v. *Georgia,* 235 U. S. 651, 656 [35 Sup. Ct. 214, 59 L. Ed. 405]). Where payment is deferred the contract may provide that the shipper shall pay in any event, or merely that he shall pay if the consignee does not. Or the carrier may accept the goods for shipment solely on account of the consignee, and may contract·that only the consignee shall be liable; or both the shipper and consignee may be made liable. ■■ The mere delivery of the goods to a carrier for transportation does not necessarily import an absolute promise by the shipper to pay the charges. To ascertain the contract the bill of lading must be looked to primarily, as this serves both as a receipt and a contract. ■■ Ordinarily the person from whom the goods are received for shipment assumes the obligation to pay the charges, and this obligation is ordinarily a primary one. The shipper is presumably the consignor, and the transportation ordered by him is presumably on his own behalf, and a promise to pay may be inferred therefrom. This inference may, however, be rebutted, and it may be shown by the bill of lading or otherwise that the shipper was not acting in his own behalf, that this fact was known to the carrier, and that the parties intended not only that the consignee should assume an obligation to pay but that the shipper should not assume any liability whatsoever, or that he should assume only·a secondary liability.

"The bills of lading covering nine of the cars mentioned are set out in the record. These provided that every service to be performed should be subject to the conditions therein, whether printed or written, including the conditions on the back thereof, to which the shipper agreed and accepted for himself and assigns. These, as stated, were signed by the defendant. Three contained the following provisions: 'Section 7. . . . The owner or consignee shall pay the freight and average and all other lawful charges accruing on said property; but except in those instances where it may be lawfully authorized to do so no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all lawful charges accru-

ing on said property except that, if the consignor stipulates by signature in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges, and the carrier, contrary to such stipulation, shall make delivery without requiring such payment the consignor shall not be liable for such payment.'

"On the face of these documents the following was printed: 'If this shipment is to be delivered to the consignee without recourse on the consignor the consignor shall sign the following statement . . . The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. (See section 7 of Conditions.)' None was signed by the defendant.

"In the first clause of section 7 following the provision 'that the owner or consignee shall pay the freight and average and all other lawful charges accruing on said property . . . ' there is the stipulation that 'except in those instances where it may be lawfully authorized to do so no carrier or railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid'. This stipulation clearly refers to those instances where, by statute or by rule of the interstate commerce commission, the carrier is permitted to extend the time for payment of the charges. Such was the case here; and the extension given the fruit company, in view of the authority granted the carrier by the commission, was not in violation of this clause of the bill of lading.

"Six of the bills of lading contained the following provision: 'Section 7. The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and if required shall pay the same before delivery.' No provision similar to those contained in the three bills of lading first mentioned, requiring collection of the freight upon delivery if stipulated by the consignor, appear thereon.

"The bill of lading covering the remaining car, which was No. P. F. E. 10456, does not appear in the record, and the claim for the amount unpaid thereon will be hereinafter considered.

"The complaints alleged that the cars were delivered to defendant, but the court found that delivery was made to

the fruit company. ■ The physical facts were, of course, as found, but the legal effect of defendant's conduct, namely, its direction after the arrival of the cars that their contents be delivered to the fruit company without the production of the bill of lading, has been held to be such an exercise of ownership that their acceptance as consignee is necessarily implied (*Mellon* v. *Landeck*, 248 Ill. App. 353; *Dare* v. *New York Central R. Co.*, 20 Fed. (2d) 379; *New York Central R. Co.* v. *Stanziale*, 105 N. J. L. 593 [147 Atl. 457]). ■ Where a shipment is received by the consignee a legal obligation arises to pay the freight whether the same be demanded at the time of delivery or later (*Pittsburgh etc. Ry. Co.* v. *Fink*, 250 U. S. 577 [40 Sup. Ct. 27, 63 L. Ed. 1151]; *Louisville & Nashville R. Co.* v. *Central Iron & Coal Co.*, supra; *Houston & T. C. R. Co.* v. *Lee County etc. Co.*, 14 Fed. (2d) 145). The authorities also hold without exception, so far as we are advised, that a mere direction by a consignor or consignee liable for the freight that a shipment be carried or diverted 'freight collect' or delivered 'upon payment of freight charges', or the like, is insufficient to relieve him of such liability (*Wabash Ry. Co.* v. *Horn*, 40 Fed. (2d) 905; *Dare* v. *New York Central R. Co.*, supra; *Mellon* v. *Landeck*, supra; *New York Central R. Co.* v. *Stanziale*, supra; *New York Cent. R. Co.* v. *Federal Sugar Refining Co.*, 235 N. Y. 182 [139 N. E. 234, 26 A. L. R. 1312]; *Missouri Pacific R. Co.* v. *Pfeiffer Stone Co.*, 166 Ark. 226 [266 S. W. 82]; *Southern Pacific Co.* v. *Oregon Growers' etc. Assn.*, 127 Or. 364 [272 Pac. 281]; *Seaboard Airline R. Co.* v. *Montgomery*, 28 Ga. App. 639 [112 S. E. 652]; *Atchison, T. & S. F. Ry. Co.* v. *F. H. Stannard & Co.*, 99 Kan. 720 [162 Pac. 1176, L. R. A. 1917C, 1124]; *Chicago Junction Ry. Co.* v. *Duluth Log Co.*, 161 Minn. 466 [202 N. W. 24]). Here the court said: 'Under the uniform bill of lading the consignor is given the opportunity to relieve himself from liability by so indicating on the face of the bill.' (See, also, *Grand Trunk Western R. Co.* v. *Makris*, 142 Misc. 807 [255 N. Y. Supp. 443].) In *New York Central R. Co.* v. *Warren Ross Lumber Co.*, 234 N. Y. 261 [137 N. E. 324, 24 A. L. R. 1160], it was held that the language of such a direction was not contractual, its effect being merely to give the carrier an option to demand payment from the person to whom it delivered the

goods; and in *Western Maryland Ry. Co.* v. *Cross,* 96 W. Va. 666 [123 S. E. 572], that the consignor was liable notwithstanding such direction, unless otherwise stipulated by signature on the bill of lading. The general rule is stated in *Georgia, Florida & Alabama Ry. Co.* v. *Blish, etc.,* 241 U. S. 190 [36 Sup. Ct. 541, 60 L. Ed. 948], where it was held that parties to a contract of interstate shipment by rail cannot waive its terms, nor can the carrier by its conduct give the shipper the right to ignore such terms and hold the carrier to a different responsibility than that fixed by the agreement made under the published tariffs and regulations.

■ "It was stipulated at the trial that the defendant was not the owner of the grapes but the agent for the owners, and, as stated, the court found that this was the customary way of marketing such products, and that the carrier was put upon notice of the facts. But notwithstanding this finding the defendant, as the consignee named in the bill of lading covering six of the cars, expressly agreed therein to pay the freight. As the consignee of three of the other cars, it made the same agreement, and the bill of lading provided that as consignor it should likewise be liable unless it stipulated by its signature on the face thereof that the carrier should not make delivery without requiring payment of the freight charges. Defendant's unqualified promises to pay, either as consignor or consignee or both, made it legally held for the freight; and, as held in *Louisville & Nashville R. Co.* v. *Central Iron & Coal Co., supra,* no act or omission, except allowing the statute of limitations to run, will estop or preclude the carrier from enforcing this obligation. While it was held in *Yazoo & M. V. R. Co.* v. *Zemurray,* 238 Fed. 789, that notwithstanding the obligation of the owner or consignor to pay, the carrier might be bound by its election to collect from a consignee; yet, as pointed out in *Main Island Creek Coal Co.* v. *Chesapeake & Ohio Ry. Co.,* 23 Fed. (2d) 248, this conclusion was inconsistent with later decisions in *Louisville & Nashville R. Co.* v. *Central Iron & Coal Co., supra,* that no act of the carrier could estop it from enforcing payment from any person legally liable. (See, also, *United States* v. *United States Steel Products Co.,* 27 Fed. (2d) 547, and *New York Cent. R. Co.* v. *Federal Sugar Refining Co., supra.*) And according to the following decisions the freight can be re-

covered from a shipper liable therefor notwithstanding a custom, known to the carrier, that the amount should be paid by the consignee and deducted from the price of the goods, and the consignee fails to pay: *Atchison, T. & S. F. Ry. Co.* v. *Hunt Bros. Fruit Co.*, 34 Fed. (2d) 582; *Moss Lumber Co.* v. *Michigan Central R. Co.*, 219 Ala. 593 [123 So. 190]; *Chicago I. & L. Ry. Co.* v. *Peterson,* 168 Wis. 193 [169 N. W. 558]; *Pennsylvania R. Co.* v. *Marcelletti,* 256 Mich. 411 [240 N. W. 4, 78 A. L. R. 323]. ▆ It has also been held under facts similar to those here involved that a person to whom a shipment is delivered upon the order of the consignee is the assignee of the latter, and under the statute becomes liable as though named as such consignee. (*New York Cent. R. Co.* v. *Warren Ross Lumber Co., supra; Erie Ry. Co.* v. *H. Rosenstein Inc.*, 249 N. Y. 241 [164 N. E. 37, 61 A. L. R. 415]; *Pennsylvania Ry. Co.* v. *Titus,* 216 N. Y. 17 [109 N. E. 857, Ann. Cas. 1917C, 862, L. R. A. 1916E, 1127].) This, however, as shown by the decisions hereinbefore cited, does not relieve a consignor or the original consignee who is liable for the freight; nor does the fact that the carrier received the note of a consignee therefor, or files a claim against his bankrupt estate, release others who are liable; nor does the failure to notify such persons of nonpayment have that effect, as the carrier's right to recover is only barred by limitation and not by laches. (*Louisville & Nashville R. Co.* v. *Central Iron & Coal Co., supra; Cleveland C. C. & St. Louis Ry. Co.* v. *Southern Coal & Coke Co.*, 147 Tenn. 433 [248 S. W. 297]; *Great Northern Ry. Co.* v. *Hocking Valley etc. Co.*, 166 Wis. 465 [166 N. W. 41]; *New York Cent. R. Co.* v. *Lehigh Stone Co.*, 220 Ill. App. 563.) ▆ While usage or custom may limit the liability of shippers and carriers (17 Cor. Jur., Custom and Usage, sec. 74, p. 507), neither can be relied upon if it be in conflict with the terms of the contract (*Andrews* v. *Waldo,* 205 Cal. 764 [272 Pac. 1052]; *Fuqua* v. *Thomas,* 96 Cal. App. 304 [273 Pac. 1091]; *Rasmussen* v. *Pacific Fruit Exchange,* 111 Cal. App. 346 [295 Pac. 538]); and in view of the foregoing it seems clear that neither the customs found by the trial court, the fact that the carrier filed a claim against the bankrupt, nor its failure to notify defendant that payment had not been made, constituted defenses to the action.

■ "The eighth count of the complaint as amended at the trial alleged a claim for the freight on car P. F. E. 10,456. The weight of the grapes therein was 33,856 pounds, and the total freight claimed was $690.70. The correctness of these figures is not disputed. It was agreed at the trial that all the bills of lading were signed by the defendant or its authorized agent, and that a bill of lading was issued for this car. This bill of lading, as stated, was not produced at the trial and no direct evidence of its terms appears from the record. However, counsel for plaintiff, in opening its case, stated that all the cars were shipped on straight bills of lading in which the defendant was named both as consignor and consignee. Counsel for defendant in reply assented to this statement. It appears to have been undisputed that the missing bill of lading was in the same form as one of the two hereinbefore described. As we have seen, each form expressly provided that the consignee should pay the freight charges. Defendant having signed the bill of lading, and being named therein as consignee, became obligated for the same reasons which apply to the other shipments, and this obligation was not discharged by what subsequently occurred."

■ The defendant contends that because several shipments extending over a period of about ten days or two weeks were involved, the plaintiff has been guilty of a course of conduct involving a breach of duty to the defendant and is liable to the defendant for the damages resulting therefrom, which under the facts it is stated would be equivalent to the amount of the freight charges involved. The defendant, referring to *Chicago & Northwestern Ry. Co.* v. *Lindell*, 281 U. S. 14 [50 Sup. Ct. 200, 74 L. Ed. 670], contends that such a claim for damages may be offset against the claim for freight charges, and, relying upon such cases as *Interstate Window Glass Co.* v. *New York, N. H. & H. R. Co.*, 104 Conn. 342 [133 Atl. 102], and *Esterville Produce Co.* v. *Chicago, R. I. & P. R. Co.*, 57 Fed. (2d) 50, insists that the plaintiff in the present case is liable to it for damages for breach of duty consisting of two elements: First, the alleged violation of *ex parte* order No. 73 promulgated by the interstate commerce commission pursuant to the authority granted by subdivision 2 of section 3 of the Interstate Commerce Act (U. S. C. A., Title 49, p. 157), which pro-

vides that the carrier, upon taking precautions deemed by it to be sufficient to insure payment of the freight charges, may relinquish possession in advance of payment and may extend credit for a period of ninety-six hours. (75 I. C. C. 591.) In this connection it is not disputed that the carrier had a twenty-four hour credit arrangement with the Puccia Fruit Company, but it is contended that the repeated deliveries under this credit arrangement at a time when freight charges on prior deliveries remained unpaid, constituted the violation and breach amounting to conversion of the shipments by the plaintiff with resulting liability for damages. The second element is the alleged conversion by the plaintiff by reason of the delivery of the shipments contrary to the express instruction received by the carrier after the shipments had arrived at their destination, to deliver the fruit to Puccia Fruit Company upon payment of the freight charges. There is a complete answer to the arguments advanced in connection with these contentions. It must be noted first of all, with respect to the claimed violation of *ex parte* order No. 73, that inasmuch as the liability of the shipper pursuant to its contract was not changed by the existence of any alleged custom, the extension of credit was likewise made to the defendant. The defendant's claim for damages, if it may be deemed to have one, and this question we do not decide, must therefore rest on its claim of conversion by reason of the delivery contrary to the instruction to relinquish the shipments on payment of freight charges.

But in any event the contention that the defendant is entitled to an offset on the theory that the plaintiff has converted the goods comes too late. The pleadings of the defendant do not tender the issue nor do they purport to claim an offset under any theory. The stipulation between the parties in this case that the pleadings be deemed to be amended to conform to the proof is not sufficient to supply that omission. The issue presented by the defendant's answer and pursuant to which evidence was offered, and the theory upon which the trial was had and the appeal argued before the District Court of Appeal, was the claimed non-liability of the defendant because of the custom alleged to exist in respect to the shipment of produce from California to the eastern market. We conclude that the District Court of Appeal has correctly stated the law applicable to the facts

on the issue of the defendant's liability under its contract of shipment and that that was the only issue for determination presented by the record.

The judgments are reversed.